**Woodrow NAILS, Jr., Plaintiff–Appellant,**

v.

**AETNA INSURANCE COMPANY and Sue Ann Head, Director of the Division of Workers' Compensation, Tennessee Department of Labor, Second Injury Fund, Defendants–Appellees.**

Supreme Court of Tennessee,
at Jackson.

June 1, 1992.

Michael W. Whitaker, Covington, for plaintiff-appellant.

Edwin E. Wallis, Jr., J. Mark Patey, Moss, Benton, Wallis & Pettigrew, Jackson, for defendant-appellee, Aetna Ins. Co.

Charles W. Burson, Atty. Gen. & Reporter, Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for appellee, Second Injury Fund.

## OPINION

ANDERSON, Justice.

In this workers' compensation appeal, the trial court found that there were no grounds to set aside a lump sum permanent disability award under Tenn.Code Ann. § 50–6–206, or Tenn.R.Civ.P. 60.02, and further found that the plaintiff had not suffered a new injury nor aggravated an old injury. The trial court denied recovery, and we affirm.

The plaintiff, Woodrow Nails, age 47, had been employed by Maxwell's Big Star Grocery for 30 years as a store manager at the time of trial. He was a high school graduate and had no other vocational training.

In September of 1987, Nails suffered a ruptured disc in the course of his employment, underwent surgery by Dr. Stonecipher, and subsequently settled his claim without the benefit of counsel for the 10 percent anatomical disability assessed by his surgeon. He returned to work and worked regularly without difficulty until September 1989, when he again injured his back on the job. Surgery was performed by Dr. Engelberg and a 2 percent additional anatomical disability was assessed. Dr. Engelberg determined there was nerve root compression and removed both bone and disc material at the 4th and 5th lumbar vertebrae.

On June 7, 1990, as a result of his second injury, Nails, now represented by counsel, settled his workers' compensation claim for a lump sum of $55,440.00, based on a 55

percent permanent disability assessment. The trial court order provided for the defendant to pay past medical expenses of $12,667.70; temporary total disability of $2,016.00; Dr. Engelberg's deposition expense of $440.80; and left open future medical expenses.

After the settlement, Nails continued to work as store manager at Maxwell's; however, according to him, his pain began to increase to the point where he was in almost constant pain. He advised his employer that he needed medical treatment but did not want to return to his treating physician, Dr. Engelberg, because he had been released without restrictions and he was having a lot of pain. The defendant insurance company did not initially approve of additional medical treatment by a new physician, but eventually approval was received for a third back surgery by Drs. Patterson and Lynch. Nails worked until October 3, 1990, and then underwent back fusion surgery.

On November 30, 1990, Maxwell's terminated Nails from his employment on the basis that he was unable to perform his job, and he has been unemployed since.

Nails filed a motion for further relief on October 5, 1990, alleging the defendant Aetna had willfully refused to pay court ordered medical deposition expense and to provide needed medical treatment. Nails sought an order for payment of future medical expenses and temporary total disability benefits since the lump sum settlement. On February 6, 1991, Nails filed an amended complaint which alleged a new injury, or an aggravation of his pre-existing condition, or, in the alternative, sought to increase his previous lump sum settlement award.

Nails testified at trial he had problems throughout obtaining approval for medical care and payment of medical expenses from the defendant Aetna. He said that Engelberg had done the second surgery; that the doctor had placed no limitations on his work; that he was having a lot of pain and wanted to see someone besides Dr. Engelberg. He testified that he attempted to get authorization from the insurance company to see Dr. Patterson, but had considerable difficulty before it was finally approved. Nails said that he talked with Doug Maxwell on October 2, 1990, about surgery. Maxwell then talked to a representative of Aetna and told Nails that if an attempt was made to get additional surgery, he would not receive any workers' compensation because he would not be working for them from that time on. Nails testified at trial that he hurt his back on July 4th, while working in the meat department. He said he did not tell his supervisor at the time, and when asked whether he ever told anyone before the trial, his response was "I think so, but I don't remember when."

Jimmy Maxwell testified that he was a partner in the Maxwell's Big Star Grocery, and that Nails never told him about re-injuring his back on July 4th, or at any time since the lump sum settlement. He said Nails had continued to work under a great deal of pain, but his pain was the same before the lump sum settlement in June of 1990 as it was afterwards. After the second surgery in September of 1989, they tried to make sure that Nails had someone to help him with the heavier work, but he conceded that sometimes people were not there in their kind of business. Maxwell said that he had talked with Angela Stump of Aetna about Nails' dissatisfaction with Dr. Engelberg and his desire to go to another doctor, and that Angela Stump questioned that. He terminated Nails on November 30, 1990, because he simply could not do his job.

Douglas Glenn Maxwell testified that he was a partner in Maxwell's Big Star Grocery, and that Woody Nails never told him that he had re-injured his back.

On October 3, 1990, Dr. Lynch performed surgery to fuse the lower two sections of Nails' back. He was advised to remain off work for approximately one year and assessed a 20 percent permanent partial impairment to the body as a whole as a result of this surgery. Dr. Lynch performed a bilateral fusion of the 4th and 5th vertebrae of Nails' back and testified his problems were due to instability of the facet

joints in his back. According to the doctor, the x-rays taken revealed that the joints which stabilize that part of Nails' back had been largely removed in the second surgery, which resulted in instability. He testified that fusion is not necessary in most situations like the plaintiff's, but the likelihood increased after the second surgery.

All parties conceded that the court order of June 7, 1990, required the payment by Aetna Insurance Company of the deposition costs of $440.80 to plaintiff's attorney, and that as of September 13, 1991, he had still not been paid.

Based on the foregoing evidence, the trial court concluded that Nails' condition at trial was the result of an unstable back condition resulting from the second surgery performed in December of 1989, and that he had suffered no additional or new injury to his back as a result of his return to employment after the lump sum settlement of June 7, 1990. The court also found that Nails had given no notice to his employer of any new or additional injury, but simply made them aware of the constant pain he was experiencing. The trial court concluded that Nails' lump sum settlement of June 7, 1990, foreclosed any further claim that he might have as a result of his back injury that resulted in the lump sum settlement of June 7, 1990. The trial court ordered the defendant Aetna to pay the deposition cost previously ordered to be paid on June 7, 1990.

Our standard of review of findings of the trial court is *de novo,* with a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn.Code Ann. § 50–6–225(e) (1991).

## NEW OR AGGRAVATED INJURY

◼ Nails contends he suffered a new injury on or about July 4, 1990, while working in the meat department of Maxwell's. However, he did not tell either partner about it at that time and could not relate when he had told them, nor did he tell his physician, or, for that matter, anyone else. Both Maxwell partners deny that they were told of the re-injury. They did concede that they were generally aware of his complaints of pain throughout the summer of 1990, but that the complaints were generally of the same frequency and intensity as they were before the lump sum settlement of June 1990. In the alternative, Nails contends that his work in the summer of 1990 aggravated his pre-existing condition by advancing the severity of his condition.

The medical proof shows that the removal of certain bony portions of the back in the 1989 surgery created instability in the back. That instability, in turn, caused the increased pain in the summer of 1990, and led to Nails' election to have fusion surgery in the fall of 1990.

Our examination of the record indicates the evidence does not preponderate against the trial court finding that "plaintiff suffered no additional or new injury to his back as a result of his return to his employment after the lump sum settlement of June 7, 1990," and that "plaintiff gave no notice to the employer of any additional injury, but simply made them aware of his constant pain that he was experiencing."

Accordingly, the argument of Nails that he suffered a new, or aggravated an old, injury is without merit.

## MODIFICATION OF LUMP SUM AWARD

Nails contends that the lump sum award should be modified or set aside, and additional disability awarded. He first argues that Tenn.Code Ann. § 50–6–231, which provides that lump sum settlements are final, has been impliedly repealed by Tenn. Code Ann. § 50–6–206, and that statute's provisions entitle him to set aside the lump sum settlement. Secondly, he contends in the alternative that the judgment should be set aside under Rule 60.02 of the Tennessee Rules of Civil Procedure.

Tenn.Code Ann. § 50–6–231 (1983 & Supp.1991) provides that lump sum settlements are final, whereas periodic awards for more than six months are modifiable.

All amounts paid by employer and received by the employee or the employee's

dependents, by lump sum payments, shall be *final,* but the amount of any award payable periodically for more than six months may be modified....

(Emphasis added.)

Tenn.Code Ann. § 50–6–206 (1983 & Supp.1991) provides, with respect to settlements, the following:

> Provided, further, that if it shall appear that any settlement approved by the Court does not secure to the employee in a substantial manner the benefits of the Workers' Compensation Law, the same may, in the discretion of the trial judge, be set aside at any time within thirty (30) days after the receipt of such papers by the division of workers' compensation, upon the application of the employee....

■ This Court recognized in *Reams v. Trostel Mechanical Indus., Inc.,* 522 S.W.2d 170, 172–73 (Tenn.1975), that the language of Tenn.Code Ann. § 50–6–231, which provides that lump sum awards are final, was impliedly repealed to the extent that it conflicted with Tenn.Code Ann. § 50–6–206, which allows such settlements to be set aside under certain circumstances if application is made to the trial court within 30 days after the division of workers' compensation's receipt of the judgment. Thus, if Tenn.Code Ann. § 50–6–206 is not applicable by reason of its time constraints, lump sum settlements are final. Even if its provisions are applicable, the trial court must be shown that the settlement did not secure to the employee in a substantial manner the benefits of the Workers' Compensation Act. As we pointed out in *Corby v. Matthews,* 541 S.W.2d 789, 793 (Tenn.1976), both the defendant and the plaintiff take a risk when they enter into lump sum settlements because of their finality.

■ Based on the record before us, we conclude that there was no motion to set aside the award within 30 days after the receipt of the settlement by the division of workers' compensation. The settlement occurred on June 7, 1990. The record does not tell us when the state agency received the settlement documents. It is suggested by Nails in a motion for consideration of post-judgment facts that the date was September 19, 1990. Even if we consider the post-judgment facts offered by Nails, no motion to set aside the judgment was filed until February 6, 1991, if we decide to treat Nails' amended complaint filed on that date as a motion to set aside the judgment.

Nails contends that his amended and supplemental complaint filed February 6, 1991, should be treated as a petition to set aside the settlement order of June 7, 1990, under Tenn.R.Civ.P. 60.02. As the defendant points out, the amended complaint requested an increase in the June 7, 1990, settlement award, relying on the aforementioned statute, Tenn.Code Ann. § 50–6–231. The defendant argues that this pleading did not seek to set aside a lump sum settlement award and, therefore, cannot be treated as a Rule 60.02 motion.

■ Irrespective of the technical arguments about the relief sought in the complaint, we agree that Rule 60.02 presents an avenue of relief for Nails in a workers' compensation case, provided that one or more of the grounds listed in Rule 60.02; i.e., mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or other misconduct of an adverse party, is satisfied. *Corby v. Matthews, supra,* 541 S.W.2d at 793. Nails relies on two provisions of 60.02—"mistake" under subsection (1), and "any other reason justifying relief from the operation of the judgment" under subsection (5). In *Toney v. Mueller Co.,* 810 S.W.2d 145 (Tenn.1991), this Court held, in determining whether there was a mistake within the meaning of Rule 60.02, that the mistake must be one of fact concerning the extent of the plaintiff's injury and disability then existing at the time of the original hearing in the case. *Id.,* 810 S.W.2d at 146. *See also Corby v. Matthews, supra,* 541 S.W.2d at 795. In *Toney,* we found that the conditions for which the plaintiff was being treated existed at the time of trial; that there was no mistake of fact at the time of the original hearing in the case. *Id.*

■ Returning to the facts of this case, our examination of the medical and other

proof leads us to conclude that there was no mistake within the meaning of Tenn. R.Civ.P. 60.02, in that there was no mistake of fact concerning Nails' injury and disability then existing at the time of the original hearing in the case. What later occurred was not 100 percent predictable. In fact, as Dr. Lynch testified, fusion is a surgical procedure that is not performed in the majority of situations like the plaintiff's.

Finally, Nails contends that the catch-all provision in Rule 60.02(5), which permits a claim for "any other reason justifying relief from the operation of the judgment," would apply in this case even if no mistake exists. The relief provided under Rule 60.02 is an exceptional remedy, *Toney v. Mueller Co., supra,* 810 S.W.2d at 146, and with respect to the catch-all provision, the application of this clause requires an extraordinary circumstance and extreme hardship. *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn.1976); *Duncan v. Duncan,* 789 S.W.2d 557, 564 (Tenn.App. 1990).

We conclude Nails has not made out a case for relief under Rule 60.02, and accordingly, we find that the trial court has not abused its discretion with respect to its Rule 60.02 decision.

■ We hold on the basis of the foregoing that the evidence does not preponderate against the trial court's finding that the petition for workers' compensation benefits should be denied, except to the extent that Nails is entitled to be reimbursed for deposition costs previously ordered on June 7, 1990, almost two years ago. This circumstance and our review of the record requires us to comment on the obligation of an employer and/or their insuror to pay *medical and other expenses on a prompt and timely basis* where they are clearly the employer's obligation under the workers' compensation statute.

In this case, there is a disturbing series of complaints about the defendant insurance company's failure to provide medical treatment and pay medical expenses on a timely basis, to which the defendant did not respond. In addition to that, there is an obvious failure to comply with a court order which was brought to the defendant's attention by court motion four months after the court order. The ordered payment still had not been paid at the time of trial, fifteen months after the original trial court order.

In the October 1990 motion seeking compliance with the June 1990 court order, Nails moved the court for an order requiring the defendant to pay for medical treatment requested, including the fusion surgery. Because the defendant then agreed to pay for the medical treatment, the trial court was not required to make a determination about future medical treatment, or about the allegations of delay, except to again order that the deposition expense be paid. The record shows that all of the medical expenses and surgeries were reasonably required by a long-time and valued employee of the defendant grocery company. Based on the incomplete record we have before us and the lack of a trial court determination, we can make no finding with respect to any claimed delay, except to find that no excuse is offered for the failure to pay the deposition expense after it was pointed out to the defendant by counsel and later by court motion. The eleven months delay in payment after the court motion is inexcusable. No beneficiary of the Workers' Compensation Act should be required to take court action to obtain medical treatment and medical expenses to which they are clearly entitled under the statute.

Accordingly, we affirm the judgment of the trial court, and assess the costs of the appeal against the plaintiff, Woodrow Nails, Jr.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.