IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2005 Session

## STATE OF TENNESSEE, ex rel., BRANDI SHANTIKA TAYLOR v. CEDRICK CORTEZ WILSON

**A Direct Appeal from the Juvenile Court for Shelby County**
**No. N4506     The Honorable Kenneth Turner, Judge**

_____

**No. W2004-00275-COA-R3-JV - Filed March 3, 2005**

_____

Appellant challenges trial court's dismissal of his petition, under Tennessee Rule of Civil Procedure 60.02(4), seeking to rescind his voluntary legitimation of child, modify custody, set aside paternity order and modify child support arrearage, based on results of DNA test that conclusively proves that he is not the father of the child. We reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Reversed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

David M. Waldrop of Memphis for Appellant, Cedrick Cortez Wilson

Paul G. Summers, Attorney General and Reporter; Warren A. Jasper, Assistant Attorney General for Appellee, State of Tennessee, ex rel., Brandi Shantika Taylor

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

On February 1, 2002, Appellant's paternity of Cortarius Tyrez Taylor (D.O.B. 11/10/1999) and Cedrick Cortez Wilson, Jr. (D.O.B. 11/20/1995) was established by an order of the Shelby County Juvenile Court. Only the paternity of Cortarius Tyrez Taylor is at issue in this appeal. Appellant alleges that his voluntary legitimation of Cortarius was based on the mutually mistaken belief of himself and the child's mother, Brandi Shantika Taylor, that he was the father of Cortarius. On September 27, 2002, an order was entered awarding retroactive child support to the mother of Cortarius in the amount of $5,400. On April 22, 2003, after Ms. Taylor informed Appellant that there was a possibility that he was not the father of Cortarius, Appellant filed a Petition to Establish Paternity, alleging he "may not be" the natural father of Cortarius and seeking an order requiring the

parties to submit to a blood test to establish paternity, and, if the results showed he was not the father of Cortarius, relieving him from any further obligation to pay child support and forgiving all child support arrearages. On June 10, 2003, the juvenile court entered an order dismissing Appellant's Petition to Establish Paternity and transferred custody of Cortarius from Ms. Taylor to Appellant, and ordered him to pay his child support arrearage (which totaled $20,172.57) at the rate of $400 monthly. After the June 10 order was entered, Appellant took both Cortarius and Cedrick, Jr., with him to his home in California. While in California, Appellant had DNA testing performed on Cortarius and Cedrick, Jr., by a certified laboratory. The tests established that he is the natural father of Cedrick, Jr., but he is not the natural father of Cortarius. Appellant returned Cortarius to Ms. Taylor in July 2003. On December 17, 2003, Appellant filed a Petition to Rescind Voluntary Legitimation, Modify Custody, Set Aside Paternity Order and Modify Arrearage.

After a hearing held on January 9, 2004, the Shelby County Juvenile Court entered an order dismissing Appellant's Petition to Rescind Voluntary Legitimation. On January 22, 2004, Brandi Shantika Taylor, the mother of Cortarius, filed a petition to remove custody of Cortarius from Appellant and restore custody to her, based on the DNA test establishing that Appellant is not the natural father of Cortarius. The briefs of the parties suggest that Cortarius currently lives with Ms. Taylor in Mississippi.

## II. ISSUE

Appellant, Cedrick Cortez Wilson, presents the following issue for review:

**Whether Tenn. R. Civ. P. 60.02(4) allows Appellant, Cedrick Wilson, relief from the February 1, 2002 Finding and Recommendation of Referee and Order of the Shelby County Juvenile Court that Cortarius Tyrez Wilson was Appellant's child, on grounds that a DNA test performed after the February 1, 2002 Finding conclusively proved that Mr. Wilson is not the biological father of the minor child, Cortarius Wilson, thereby subjecting the Appellant to an inequitable prospective application of the February 1, 2002 Finding.**

## III. STANDARD OF REVIEW

In this case, Appellant seeks relief under Tennessee Rule of Civil Procedure 60.02. Relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, **834 S.W.2d 289, 294 (Tenn.1992)**. The function of Rule 60.02 is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, **533 S.W.2d 275, 280 (Tenn.1976)**. Rule 60.02 operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, **798 S.W.2d 235, 238 (Tenn.1990)**. However, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." *Banks v. Dement Constr. Co .*, **817 S.W.2d 16, 18 (Tenn.1991)** (quoting *Toney v. Mueller Co.*, **810 S.W.2d 145, 146 (Tenn.1991)**). To set aside a judgment under Rule 60.02 the burden is upon the movant to prove that he is entitled

to relief, and there must be proof of the basis on which relief is sought. *See Brumlow v. Brumlow*, **729 S.W.2d 103, 106 (Tenn.Ct.App.1986)**; *Jefferson v. Pneumo Servs. Corp.*, **699 S.W.2d 181, 186 (Tenn.Ct.App.1985)**. A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge. Accordingly, the scope of review on appeal is limited to whether the trial judge abused his discretion. *See Toney v. Mueller Co.*, **810 S.W.2d 145 (Tenn.1991)**; *Travis v. City of Murfreesboro*, **686 S.W.2d 68, 70 (Tenn.1985)**.

## IV. ANALYSIS

Appellant, Mr. Wilson, contends that since DNA tests conclusively prove that he is not the biological father of Cortarius, he is entitled under Tennessee Rule of Civil Procedure 60.02(4) to prospective relief from the order requiring that he support Cortarius. Rule 60.02 reads in its entirety as follows:

> **Rule 60.02. Mistakes; Inadvertence; Excusable Neglect; Fraud, etc.**
>
> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Appellant relies upon part (4) of this Rule, providing for relief from a judgment, order or proceeding if "it is no longer equitable that a judgment should have prospective application." In his appeal brief Appellant argues that "it is no longer equitable that an Order acknowledging a voluntary legitimation of a child have prospective application after science has conclusively demonstrated the fallacy of the voluntary legitimation." Because Appellant rests his claim upon Rule 60.02(4), even if we do determine that relief should have been granted to him, he will still be bound by the adjudication legitimating Cortarius up until the time of filing of his petition for relief, April 22, 2003.

On several earlier occasions this court has considered the issue of whether a putative father may be relieved of the obligation to support a child, when DNA evidence conclusively establishes that the child is not his own. In one case, ***Richards v. Read*, No. 01A01-9708-PB-00450, 1999 WL 820823 (Tenn. Ct. App. July 27, 1999)**, a trial court dismissed an appellant's petition for relief from his child support obligations after blood tests conclusively established that he was not the child's father. We concluded that the appellant was entitled to relief under Rule 60.02(4), relying on the policies enunciated in ***Harmon v. Harmon*, No. 02A01-9709-CH-00212, 1998 WL 835563 (Tenn. Ct. App. Dec. 3, 1998**) and ***Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559 (Tenn. Ct. App. Dec. 17, 1998)**. In ***Harmon***, we held that "a husband may seek to avoid his child support obligation for a child born during the marriage but which is not his biological child, if a guardian ad litem is appointed to represent the best interest of the child, and if the husband is able to rebut the presumption of legitimacy by clear, strong and convincing evidence to the contrary." *Id*. at \*4. We explained that, "[w]hile relieving a father of his duty to support a child born during his marriage to the child's mother may work a harsh result, the trial court and the [guardian ad litem] are there to ensure that this result is reached only when the child's true status is shown by 'clear, strong, and convincing' evidence." *Id*. at \*5. In ***Granderson***, we considered the appeal of a putative father who sought DNA tests to determine the paternity of a minor child, concerning whom he had previously entered into a voluntary consent order of paternity with the child's mother. Although the application of Tenn. R. Civ. P. 60.02(4) was not at issue in ***Granderson***, we reviewed the policy underpinnings of Tennessee's paternity statute, T.C.A. § 24-7-118(e). We approvingly quoted language we used in our earlier case, ***Shell v. Law*, 935 S.W.2d 402, 408 (Tenn. Ct. App. 1996)**:

> Under the authority of *Bass* and T.C.A. 24-7-112, we believe that all common law presumptions relating to the paternity and legitimacy are rebuttable and the public policy has now been established by the General Assembly that true parentage is the end that should be pursued by the courts in paternity actions.

***Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559, \*3 (Tenn. Ct. App. Dec. 17, 1998).**

In another case, ***White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999)**, we considered a petition for post-judgment relief from a child support order when the appellant, who had voluntarily legitimated the child in question three years earlier, discovered through genetic testing that he could not be the child's biological father. The juvenile court had declined to grant relief, after concluding that the man and the child's mother had perpetrated a fraud on the court in obtaining the original legitimation order. We concluded that the appellant had not perpetrated a fraud on the court, and we noted that, under Tennessee law, "it is of overriding importance ... that one conclusively established in law not to be the father of a child be not declared as the father of that child." *Id*. at \*5 (***quoting Johnson v. Johnson*, 1997 WL 271787, at \*3**). From our review of ***Richards***, ***Harmon***, ***Granderson****, and* ***White****,* it is apparent that Tennessee law strongly favors requiring biological parents to bear responsibility for their own children, and that this policy also favors relieving putative fathers of the burden of supporting

children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring.

The State of Tennessee, in its appeal brief, implores us to find that the trial court did not abuse its discretion in failing to grant relief to Mr. Wilson. The state argues that, when the equities are weighed, "they do not favor granting Appellant relief under Rule 60 for his voluntary undertaking." The state further contends that Mr. Wilson waived his right to contest his paternity of Cortarius by failing to request a DNA test during the initial paternity proceeding. However, the law of Tennessee does not recognize such a waiver under these circumstances. Every indication in the record suggests that Mr. Wilson believed that Cortarius was his natural child when he voluntarily acknowledged paternity of Cortarius, and the case law supports granting relief in such a case. Indeed, in the case of *White v. Armstrong*, **No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999),** we dealt with a situation in which the father had some suspicion—but not conclusive proof—that the child was not his own, and we acknowledged that he may have voluntarily legitimated a child in an attempt "to avoid the public humiliation and embarrassment that would follow the revelation that he was not the father ...." *Id*. at *4. We concluded that this putative father was entitled to seek prospective relief from the child support order, once he obtained irrefutable evidence that he was not the child's natural father.

We noted in *White* that "[p]ost-judgment relief in cases of this sort should not be granted without analyzing the burdens that granting relief or failing to grant relief will place on all who have an interest in the proceeding." *Id*. at *5. We proceed, therefore, to perform such an analysis. The parties with an interest in this proceeding include Mr. Wilson, Cortarius, Ms. Taylor, and the State of Tennessee. If relief is not granted to Mr. Wilson, he will be required to support a child who is not his own. This is a significant burden, especially given the young age of Cortarius—Mr. Wilson would be obligated to pay many thousands of dollars in child support before Cortarius reaches majority.

With respect to the interests of Cortarius, he has an interest in being supported financially by his biological father. There is suggestion in the record that his biological father is currently incarcerated in Oklahoma, but there is no indication of the length of the prison term being served. While the incarceration of Cortarius's biological father (if that is in fact the case) would decrease the likelihood that Cortarius could be supported by him during the term of incarceration, we do not find it equitable to impose upon Mr. Wilson the burden of paying child support for a child not his own, due to the incarceration of the child's biological father. The State of Tennessee contends that Cortarius will be harmed if we grant relief to Mr. Wilson, because Cortarius would be deprived of the love and nurturing of a man he has believed is his father. However, we conclude that given the State's strong interest in promoting the support of children by their natural parents, that Cortarius's interests will be better served by granting relief to Mr. Wilson. Furthermore, since Cortarius has a half-brother who is the natural child of Mr. Wilson, it seems unlikely that granting relief to Mr. Wilson would sever whatever relationship still exists between himself and Cortarius.

As to Ms. Taylor's interests, she is already obligated to support Cortarius, and if relief is granted to Mr. Wilson in this appeal, she will be able to pursue Cortarius's biological father for

-5-

support. And finally, as to the interest of the state, the state unquestionably has an interest in seeing to it that biological and adoptive parents support their children and avoiding the expenditure of public funds. However, on balance we do not think the interest of the state in conserving welfare funds outweighs the interest of Mr. Wilson to be free of the burden of supporting a child he did not father. The policy established in Tennessee law, strongly favoring the requiring of biological parents to bear responsibility for their own children, must prevail in this case. We conclude, therefore, that the trial court abused its discretion in failing to grant relief to Mr. Wilson.

Because Mr. Wilson seeks prospective relief, we grant relief from the date that he filed his initial petition seeking to be relieved of his child support obligation, April 22, 2003, except for any payments he actually made during the pendency of this petition for relief. Mr. Wilson will remain obligated to pay any child support arrearages that existed on or prior to that date.

## V. CONCLUSION

We reverse the order of the trial court, and we grant Mr. Wilson's petition to rescind his voluntary legitimation of child based on results of DNA test that conclusively proves that he is not the father of Cortarius. Costs in this appeal are assessed to the State of Tennessee.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-6-