IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 30, 2007

## CEDRIC L. COPPAGE v. VERONICA Y. GREEN

**An Appeal from the Juvenile Court for Shelby County**
**No. A5990     George E. Blancett, Sp. Judge**

———————————————

**No. W2006-00767-COA-R3-JV - Filed March 21, 2007**

———————————————

This is a petition to set aside an order establishing parentage. The child at issue was born in 1990. In 1997, the juvenile court entered an order establishing the petitioner as the child's father. Eight years later, the petitioner took an independent DNA test which indicated that he was not the child's biological father. The petitioner then filed a petition to disestablish his parentage of the child, attaching the results of the independent DNA test to his petition. After a hearing, the juvenile court referee recommended court-approved DNA testing to prove or disprove the petitioner's parentage. This recommendation was confirmed by the juvenile court judge. The respondent mother filed a motion for a rehearing before the juvenile court judge. The motion was granted. After a rehearing, the juvenile court judge dismissed the petitioner's petition for court-ordered DNA testing to determine parentage. The petitioner now appeals. We reverse, determining that relief should be granted under these circumstances, and remand to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is**
**Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the Opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Coleman W. Garrett, Memphis, Tennessee, for the appellant, Cedric L. Coppage.

Robert E. Cooper, Jr., Attorney General & Reporter, and Warren A. Jasper, Assistant Attorney General, Nashville, Tennessee, for the appellee, Veronica Y. Greene.

### OPINION

At some point prior to May 1990, Respondent/Appellee Veronica Green ("Mother") and Petitioner/Appellant Cedric Coppage ("Coppage") were apparently involved in a romantic relationship. On May 21, 1990, Mother gave birth to Jenarra Nicole Green.

Meanwhile, Coppage was on active duty with the United States Navy from 1989 to 1993. From 1993 to 1998, Coppage was in the Navy Reserves. Mother claimed that Coppage was the child's natural father. In September 1990, the State of Tennessee ("State"), on behalf of Mother, filed a petition in Juvenile Court against Coppage to establish his paternity.[1] Almost seven years later, on July 7, 1997, Juvenile Court Referee Claudia Haltom ("Judge Haltom") held a hearing on the State's petition. There is no transcript of the proceeding in the appellate record. On the same day, Judge Haltom entered findings and recommendations determining that Coppage was the child's natural father, and setting his child support obligation at $315 per month. The Juvenile Court Judge confirmed Judge Haltom's findings. On May 4, 1998, Coppage filed a motion to rehear the petition to establish paternity, stating that he was unrepresented by counsel at the time of the hearing to establish his paternity, that no blood test was taken to determine paternity, and that good cause existed to administer such a test. Coppage's motion was denied. He did not appeal the denial of his motion.

Almost seven years later, on March 18, 2005, the State filed a motion on Mother's behalf to modify the July 1997 child support order to increase Coppage's child support obligation. On April 20, 2005, the matter was heard before Juvenile Court Referee Cary C. Woods ("Judge Woods"). At the conclusion of the hearing, Judge Woods recommended that Coppage's support obligation be increased to $955 per month. The recommendation was approved by Special Juvenile Court Judge Herbert Lane on the same day. Coppage filed a request for a rehearing before the Juvenile Court Judge, which was initially permitted. On April 21, 2005, an amended order was entered increasing Coppage's child support obligation by $150 per month, with the increase to be applied to child support arrearages.

On July 20, 2005, Coppage, *pro se*, filed a petition in the Juvenile Court to disestablish his paternity. In his petition, Coppage asserted that he was not the child's natural father and claimed that the initial finding that he was the child's father was based on Mother's fraudulent actions. Coppage attached to his petition the results of an independent DNA test conducted on April 15, 2005, which excluded him as the father of the child. He requested that the Juvenile Court order a court-approved DNA test to establish that he is not the natural father of the child.

On August 18, 2005, Special Juvenile Court Judge George Blancett ("Judge Blancett") denied Coppage's request to rehear the matter regarding the increase in his child support obligation. Meanwhile, Coppage's petition to disestablish paternity was set for a hearing on November 1, 2005. On October 24, 2005, a guardian ad litem was appointed for the child. On November 1, 2005, the morning of the hearing, the State filed an answer to Coppage's petition, denying that any fraud was involved in the entry of the initial order establishing Coppage's parentage. The State asserted that his petition to disestablish paternity was precluded by the doctrines of *res judicata* and collateral estoppel. The State further claimed that Coppage's petition to set aside the 1997 order was not brought within a reasonable time under Rule 60.02 of the Tennessee Rules of Civil Procedure. The

---

[1] Mother was receiving State public assistance benefits pursuant to Title IV-D of the Social Security Act and, therefore, the State is representing Mother to defend the order of parentage.

State argued that granting Coppage's petition would cause irreparable harm to the child, who by that time was fifteen years old. In addition, the State filed a motion in limine to strike or exclude the results of Coppage's independent DNA test from evidence on the basis that the test was conducted without the permission of the court and that its authenticity had not been established.

On November 1, 2005, Judge Haltom conducted a hearing on Coppage's petition. The appellate record does not include a transcript of that hearing. At the conclusion of the hearing, Judge Haltom issued the following findings and recommendations:

> [U]pon proof introduced and the entire record, the Referee finds that the case should be continued, upon motion of the defendant that all parties submit to DNA testing. The Referee further finds that Cedric Coppage was in the active duty U.S. Navy from 1989 to 1993, and then from 1993 to 1998 he was in the Navy Reserves. From 1999 to present he has been active duty U.S. Navy. The child was conceived and born while Mr. Coppage was away in active service with the U.S. Navy. The child was several months old when Mr. Coppage first saw her.
>
> The child Jenera was born May 21, 1990 and paternity was established July 7, 1997. When paternity was established July 7, 1997 this was based on the unquestioned assertions of the mother that Cedric Coppage was the father. During the summer of 1991 the mother and child lived in the home of the paternal aunt Toya Coppage and caused all paternal family members to believe that Mr. Coppage was and could be the only person who was the father of said child.
>
> The mother never told Mr. Coppage that she had had sex with another man. However, the mother admitted under oath that she was also having sex with another man named Jarvis whom she met in summer school. The mother stated she did not really know who the father was. The mother testified that the man whom the child calls "dad" is a man named Michael Brooks, but that Mr. Brooks is in reality her "play daddy". She states Mr. Brooks was her boyfriend for one (1) and half years when the child was young. The child refers to the man named Michael Brooks as her father. She introduced Michael Brooks as her father to her aunt Toya Coppage. According to testimony, the child has a significant relationship with Michael Brooks.
>
> The child has had a long-distance relationship with Mr. Coppage and the child has known that Mr. Coppage was in the military. The child has bragged about her father being in the service. She has talked with him by phone and had e-mail contact. The child has called Cedric Coppage both "Cedric" and "dad." The mother admits there is not a close bond, but that the child's feelings will be very hurt over this. The child has not visited regularly with the father, as a matter of fact, the father was given credit for zero days of visitation in the child support worksheet attached as Exhibit A to the child support order of April 20, 2005.

The father attempted to get a DNA test within a year of admitting to paternity. The father hired a lawyer who was unable or inadequate in obtaining access to a DNA test. Furthermore, the father lacked the funds or was out of the country during the ensuing years when he should have filed for a DNA test.

The Court finds that pursuant to the case of Taylor v. Wilson, which relied upon Tennessee Rules of Civil Procedure 60.02, such is a case for "exceptional relief". Justice and equity demand that the truth of the child's parentage be determined. The father's attempt within one year coupled with the father's military absences, justify a reconsideration of the father's requested DNA.

The Court continues this matter for a court ordered DNA to be done on Friday November 4, 2005 at 9:00 A.M. and that a privately conducted DNA test shall not be considered evidence of proof of paternity. Furthermore, no one is to talk with the child concerning this matter.

Thus, Judge Haltom noted that the child was conceived and born while Coppage was away serving in the Navy, that Coppage and the child did not have a close relationship because Coppage had been on active duty with the Navy during much of the child's life, that Coppage sought a DNA test within a year after the order establishing his paternity, that Mother had fraudulently told Coppage that she had not had a sexual relationship with any other man, that Coppage's service in the Navy hampered his ability to file and respond to legal pleadings, and finally, that the results of Coppage's independent DNA test indicated he was not the child's father. In light of all of these circumstances, Judge Haltom held that this case warranted "exceptional relief" under Rule 60.02 of the Tennessee Rules of Civil Procedure and ordered DNA testing because justice and equity demanded that the truth of the child's parentage be conclusively determined. Judge Blancett confirmed Judge Haltom's findings.

The next day, on November 2, 2005, Mother, the GAL, and the State filed a joint motion for a hearing before the Juvenile Court Judge and for a stay of the ordered DNA testing, arguing that paternity had been established eight years prior based on Coppage's admission of paternity. Thus, they argued, the doctrines of *res judicata* and collateral estoppel barred Coppage's challenge of his paternity. The motion noted that, in his petition, Coppage failed to allege any specific acts of fraud by Mother, and that no proof of fraud was introduced at the hearing before the Referee. The matter was referred to Judge Blancett. The next day, on November 3, 2005, Judge Blancett held a hearing and stayed the scheduled DNA testing pending a rehearing on the petition to disestablish paternity.

On February 16, 2006, Judge Blancett held the rehearing on Coppage's petition to disestablish paternity. The appellate record does not include a transcript of that hearing. After the hearing, on the same day, Judge Blancett entered an order dismissing Coppage's petition. The order included neither findings of fact nor a stated basis for the dismissal. From this order, Coppage now appeals.

On appeal, Coppage argues that the Juvenile Court erred in dismissing his petition. In support, he cites Judge Haltom's written decision and the rationale set forth in ***State ex rel. Taylor v. Wilson***, No. W2004-00275-COA-R3-JV, 2005 WL 517548 (Tenn. Ct. App. Mar. 3, 2005), cited by Judge Haltom in her order. In response, the State argues that the trial court did not abuse its discretion by denying Coppage relief under Rule 60.02, maintaining that his petition was not filed within a reasonable time. The State also argues that Coppage was not entitled to a paternity test because his motion for such testing was not timely.[2]

We note that Coppage's petition to disestablish paternity was filed *pro se* and does not cite Rule 60.02 as the basis for relief. It is apparent from the substance of the petition, however, that Rule 60.02 is the appropriate legal basis for the petition. Subsection (4) of Rule 60.02 authorizes relief from an order when "it is no longer equitable that a judgment should have prospective application," and subsection (5) authorizes relief for "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02(4), (5); ***see State ex rel. Parks v. Parks***, No. W2005-00957-COA-R3-JV, 2006 WL 2032560, at *7 n.3 (Tenn. Ct. App. July 19, 2006). Therefore, we will review the Juvenile Court's denial of Coppage's request for relief under those subsections of Rule 60.02.

Our standard of review of a trial court's denial of a Rule 60.02 motion for relief from an order is well established:

> Relief under Rule 60.02 is considered "an exceptional remedy." ***Nails v. Aetna Ins. Co.***, 834 S.W.2d 289, 294 (Tenn. 1992). The function of Rule 60.02 is "to strike a proper balance between the competing principles of finality and justice." ***Jerkins v. McKinney***, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." ***Thompson v. Fireman's Fund Ins. Co.***, 798 S.W.2d 235, 238 (Tenn. 1990). However, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." ***Banks v. Dement Constr. Co.***, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting ***Toney v. Mueller Co.***, 810 S.W.2d 145, 146 (Tenn. 1991)). To set aside a judgment under Rule 60.02 the burden is upon the movant to prove that he is entitled to relief, and there must be proof of the basis on which relief is sought. ***See Brumlow v. Brumlow***, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); ***Jefferson v. Pneumo Servs. Corp.***, 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985). A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge. Accordingly, the scope of review on appeal is limited to whether the trial judge abused his discretion. ***See Toney v. Mueller Co.***, 810 S.W.2d 145 (Tenn. 1991); ***Travis v. City of Murfreesboro***, 686 S.W.2d 68, 70 (Tenn. 1985).

---

[2] We note that no transcripts of the November 1, 2006 or February 16, 2006 hearings were included in the appellate record. However, the facts of this case are not disputed, and the technical record includes sufficient information from which to render a decision in this appeal.

*Wilson*, 2005 WL 517548, at *2. Thus, we review the Juvenile Court's decision to determine if it constituted an abuse of discretion.

In *State ex rel. Taylor v. Wilson*, cited by Judge Haltom in her order requiring DNA testing, the putative father of the child at issue voluntarily legitimated the child. Later, the putative father was informed that he might not be the natural father of the child, and that both he and the mother had possibly been operating under the mistaken belief that he was the father. In light of this, the putative father filed a petition to establish his paternity, seeking an order to require the parties to submit to a blood test to prove or disprove his paternity. After a hearing, the juvenile court dismissed his petition for DNA testing. However, it transferred custody of the child to the putative father. *Wilson*, 2005 WL 517548, at *1. While the child was in the putative father's custody, he had DNA tests performed, and those tests excluded him as the father of the child. The putative father then returned custody of the child to the natural mother and filed a petition to rescind his voluntary legitimation and to set aside the paternity order. After a hearing, the juvenile court dismissed his petition for relief.

On appeal, the *Wilson* court discussed several cases in which a putative father sought relief from a paternity order based on DNA tests or other conclusive evidence that he was not the child's natural father. *See Richards v. Read*, No. 01A01-9708-PB-00450, 1999 WL 820823 (Tenn. Ct. App. July 27, 1999); *White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085 (Tenn. Ct. App. Jan. 27, 1999); *Granderson v. Hicks*, No. 02A01-9801-JV-00007, 1998 WL 886559 (Tenn. Ct. App. Dec. 17, 1998); *Harmon v. Harmon*, No. 02A01-9709-CH-00212, 1998 WL 835563 (Tenn. Ct. App. Dec. 3, 1998); *Shell v. Law*, 935 S.W.2d 402 (Tenn. Ct. App. 1996). In all of those cases, the appellate court permitted the putative father to challenge the presumption of his paternity and, consequently, to be relieved of his obligations under circumstances in which paternity was disproved by blood tests or by "clear, strong and convincing evidence to the contrary." *Harmon*, 1998 WL 835563, at *4. The appellate court has observed that "true parentage is the end that should be pursued by the courts in paternity actions." *Granderson*, 1998 WL 886559, at *3 (quoting *Shell*, 935 S.W.2d at 408). This Court has also stated that, under Tennessee law, "it is of overriding importance . . . that one conclusively established in law not to be the father of a child be not declared as the father of that child." *White*, 1999 WL 33085, at *5 (quoting *Johnson v. Johnson*, No. 02A01-9605-JV-00123, 1997 WL 271787, at *3 (Tenn. Ct. App. Jan. 7, 1997)). Relying on this precedent, the *Wilson* Court stated that "Tennessee law strongly favors requiring biological parents to bear responsibility for their own children, and this policy also favors relieving putative fathers of the burden of supporting children who have been shown, through conclusive evidence such as DNA testing, not to be their natural offspring." *Wilson*, 2005 WL 517548, at *4; *see Parks*, 2006 WL 2032560, at *8-*9.

In *Wilson*, the State argued that the equities weighed in favor of the trial court's decision to deny the putative father's request to disestablish paternity, asserting that the putative father waived his right to contest his paternity by failing to request a DNA test during the initial paternity proceeding. This argument was rejected on appeal. The *Wilson* court stated that, considering the burdens on the interested parties, the public policy in Tennessee "strongly favoring the requiring of

biological parents to bear responsibility for their own children . . . must prevail in this case." ***Wilson,*** 2005 WL 517548, at \*5. In response to the State's waiver argument, the ***Wilson*** court held that Tennessee law "does not recognize such a waiver under these circumstances. Every indication in the record suggests that [the putative father] believed that [the child] was his natural child when he voluntarily acknowledged paternity of [the child], and the case law supports granting relief in such a case." ***Id.*** at \*4. On that basis, the appellate court reversed the juvenile court's decision, holding that the juvenile court had abused its discretion in denying the putative father the requested relief.

We find the reasoning in ***Wilson*** applicable to the instant case. The State distinguishes this case from ***Wilson*** in that Coppage did not file his petition for relief until nearly eight years after entry of the order establishing his paternity. However, Coppage first sought a DNA test early in the process, within a year after entry of the paternity order, and this request was denied. Moreover, the fact that Coppage was on active duty with the military when the child was born and during most of the intervening years is a substantial consideration. Although Coppage has been required to pay child support during this time, the evidence does not indicate that the child has bonded with Coppage as his father; to the contrary, Judge Haltom's findings indicate that their relationship is attenuated at best. Thus, in some ways, the circumstances in this case are more compelling than those presented in ***Wilson***. Finally, we cannot ignore the evidence of the DNA test obtained by Coppage. Whether court-ordered or not, once DNA evidence indicates that the putative father is not in fact the biological father of the child, it is difficult to "unring that bell." Under these circumstances, we agree with Judge Haltom that "[j]ustice and equity demand that the truth of the child's parentage be determined." We conclude that the Juvenile Court abused its discretion in denying Coppage's Rule 60.02 motion for court-approved DNA testing in order to conclusively establish whether he is the biological father of this child.

The decision of the trial court is reversed, and the cause is remanded for the juvenile court to order appropriate DNA testing and for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellee Veronica Y. Green, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE