IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 22, 2010 Session

# IN THE MATTER OF: KEMPTON, L.D.

**Direct Appeal from the Juvenile Court for Shelby County**
**No. K473      George E. Blancett, Magistrate**

**No. W2009-00906-COA-R3-JV - Filed May 7, 2010**

While cohabitating with Appellant, Mother gave birth to a child, and shortly thereafter, Appellant acknowledged paternity. Several years later, a DNA test allegedly indicated that Appellant was not the child's biological father. After receiving the DNA test results, Appellant waited more than two years to file a petition to disestablish paternity, which the juvenile court denied. Because Appellant failed to file his petition for Rule 60.02 relief "within a reasonable time," we affirm the decision of the juvenile court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Vanessa Cross, Memphis, Tennessee, for the appellant, Kempton Lamonte Daniels

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Amy T. McConnell, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, *ex rel* Sherrie Morneet Alexander.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Sherrie Morneet Alexander ("Mother") gave birth to a child, K.L.D., on June 27, 1998, while she was cohabitating with Kempton Lamonte Daniels ("Appellant"). The Tennessee Department of Human Services filed a "Petition to Establish Parentage" on November 12, 1998. The following day, the parties executed a "Consent Order," acknowledging Appellant's paternity of the child. Based on the parties' admissions, the trial court decreed the child to be Appellant's natural child, and it ordered Appellant to pay child support "as able monthly[.]"

On January 10, 2007, the State of Tennessee filed a "Petition to Modify to Set Support," seeking to modify the Consent Order "to include specific support in accordance with the Tennessee Child Support Guidelines" to be paid through income assignment. Acting pro se, Appellant filed a "Petition to Disestablish Paternity" on June 12, 2007. Pursuant to Tennessee Rule of Civil Procedure 60.02(4) and (5), Appellant petitioned to set aside the Consent Order and to terminate his child support obligation, or alternatively, sought further DNA testing. In support of his petition, Appellant alleged that he did not contest the Petition to Establish Parentage because Mother told him he was the child's father. However, after a statement by Mother's friend caused him to question his paternity, he had a DNA test performed, which he claims "showed conclusively" that he is not the child's father. Appellant's petition indicates that a copy of the DNA test results was attached thereto; however, no copy is attached, and the results do not appear elsewhere in the record.

Following a May 28, 2008 hearing, the juvenile court referee made the following findings:

> [Appellant] testified that he provided support for the minor child since birth. He was informed that the minor child might not be his when the minor child was approximately five years old. After questioning, the mother stated the child was his. Father testified that he has not visited with the child in approximately one year. He stopped supporting the child approximately 11 months ago.
>
> [Mother] testified that [Appellant] questioned the parentage of the child since the child was two weeks old. That she always told him he could have a DNA

test.  That sometime in 200[5]¹ she was contacted by someone who told her she had to submit the child for DNA testing . . . .

. . . .

According to [Mother], [Appellant] questioned parentage of [the child] since the child was two weeks old.  Despite being informed of his right to testing by this Court, Mr. Daniels entered into a consent order establishing the parentage of Kempton.  Mr. Daniels testified that he has questioned [the child's] parentage since [the child] was five.  Despite his doubts [Appellant] did not seek relief until June 12, 2007.  The veracity of the filing is questioned as it coincides with the Mother's request to obtain child support filed on January 10, 2007.

The referee recommended that Appellant's Petition to Disestablish Paternity be denied, and that the Consent Order be modified to set Appellant's child support obligation at $214.00 per month to be paid through income assignment.²  The referee's "Findings and Recommendations" were confirmed by the juvenile court judge.  Following a hearing on February 24, 2009, the juvenile court special judge issued an "Order," on March 17, 2009, dismissing Appellant's Petition to Rehear, and "reconfirm[ing]" the referee's May 28, 2008 ruling.  On April 9, 2009, Appellant filed his notice of appeal, appealing from the March 17, 2009 Order.

## II.  ISSUES PRESENTED

Appellant presents the following issues for review:

1.   Whether the juvenile court referee erred in ruling that only proof regarding court approved DNA test reports are allowed into evidence, not proof of private DNA testing reports; and

2.   Whether on rehearing, the court erred in sustaining the juvenile court referee's ruling that waiver had occurred to bar Appellant from proceeding to re-open the issue of

---

¹The "Findings and Recommendations" cite the year as "2006."  However, this is apparently a typographical error by the court or misstatement by Mother, as the alleged DNA test results were dated April 1, 2005.

²Retroactive child support was also set at $25.00 per month, apparently in addition to the $214.00 amount.

paternity and neither Tenn. R. Civ. P. 60.02 (4) or (5) was applicable to provide judicial relief.

For the following reasons, we affirm the decision of the juvenile court.

### III. DISCUSSION

On appeal, Appellant contends that the juvenile court erred in "reconfirm[ing]" the referee's denial of Rule 60.02 relief. Tennessee Rule of Civil Procedure 60.02[3] provides in part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time . . . .

Rule 60.02 relief is "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). Its function is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). It operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). But, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)). The party seeking to set aside a judgment under Rule 60.02 bears the burden of proving entitlement to relief, "and there must be proof of the basis on which relief is sought." *Brumlow v. Brumlow*, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986) (citing *Rhea v. Meadowview Elderly Apartments, Ltd.*, 676 S.W.2d 94 (Tenn. Ct. App. 1984)).

"The denial of a motion to set aside a judgment pursuant to Rule [ ] . . . 60.02 of the Tennessee Rules of Civil Procedure is reviewed on an abuse of discretion standard." *Smith*

---

[3]Tennessee Rule of Juvenile Procedure 1(b) provides that the Tennessee Rules of Civil Procedure govern paternity cases.

-4-

*v. Shaw,* No. W2004-01772-COA-R3-CV, 2005 WL 1323294, at *2 (Tenn. Ct. App. June 3, 2005) (citing *Howell v. Tucker,* No. W2002-0222-COA-R3-CV, 2003 WL 22213215, at *2 (Tenn. Ct. App. Sept. 24, 2003); *Bowers v. Gutterguard of Tenn., Inc.,* No. M2002-02877-COA-R3-CV, 2003 WL 22994302, at *2 (Tenn. Ct. App. Dec.17, 2003)). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Bronson v. Umphries,* 138 S.W.3d 844, 851 (Tenn. Ct. App. 2003) (citing *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). Under the abuse of discretion standard, we uphold the trial court's ruling "'so long as reasonable minds can disagree as to the propriety of the decision made.'" *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000)). We do not simply substitute our judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998)). "Whether a Rule 60.02[] motion is filed within a reasonable time is a question of fact for the trial court, and this Court will review the trial court's determination under the abuse of discretion standard." **Walker v. Nissan N.A., Inc.**, No. M2009-00273-COA-R3-CV, 2009 WL 2589089, at *2 (Tenn. Ct. App. Aug. 21, 2009) (citing *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001)).

As grounds for re-opening his paternity order, Appellant cites independent DNA test results which he claims indicate that he is not the child's father, as well as "concealment by [] mother regarding the likelihood that another is the biological father[.]" Appellant cites several cases which he claims support the application of Rule 60.02's extraordinary relief.

In *Coppage v. Green*, No. W2006-00767-COA-R3-JV, 2007 WL 845909, at *1 (Tenn. Ct. App. Mar. 21, 2007), to which Appellant first cites, the mother gave birth to a child in 1990, and in 1997, the juvenile court referee entered findings and recommendations determining that Coppage was the child's father. However, the results of an April 2005 independent DNA test excluded Coppage as the child's father, and three months later, in July 2005, Coppage filed a petition to disestablish paternity. *Id.* at *2. The referee found that the case warranted Rule 60.02's "exceptional relief" and ordered DNA testing. *Id.* at *3. The mother filed a motion for a stay of the ordered DNA testing, arguing that Coppage was barred from challenging his paternity established eight years prior. *Id.* at *4. The juvenile court dismissed Coppage's petition to disestablish paternity, but this Court reversed, finding that the trial court abused its discretion in denying Coppage's Rule 60.02 motion for court-approved DNA testing. *Id.* at *4, *6. In so ruling, this Court specifically noted that Coppage "first sought a DNA test early in the process, within a year after entry of the paternity order and this request was denied," and we gave "substantial consideration" to the fact that

Coppage "was on active duty with the military when the child was born and during most of the intervening years[.]" *Id.* at \*6. Furthermore, we stated that "we cannot ignore the evidence of the DNA test" which was attached to Coppage's petition to disestablish paternity. *Id.* at \*2, \*6.

Appellant also recites the "equitable principles" set forth in ***White v. Armstrong***, No. 01A01-9712-JV-00735, 1999 WL 33085, at \*3 (Tenn. Ct. App. M.S. Jan. 27, 1999) to determine whether a Rule 60.02 motion for relief from a final order involving paternity has been filed within a reasonable time:

> (1) the circumstances under which the original paternity order was entered, (2) the timing and circumstances of the previously adjudicated father's questioning that he was the child's father, (3) whether the previously adjudicated father presented or attempted to present the results of genetic, DNA, or blood testing; and (4) the burdens imposed on the previously adjudicated father and on the child by the continued enforcement or by the reopening of the judgment of paternity.

***Id.*** (citing *Ex Parte Jenkins*, Nos. 1961520 & 1961531, 1998 WL 399866, at \*8 (Ala. July 17, 1998)). Appellant argues that because he believed he was the child's biological father when paternity was initially established, and because he presented testimony regarding the alleged DNA test results, that post-judgment relief is appropriate.

In *White*, White resided with the mother when the child at issue was born, and White had no reason to believe that he was not the child's biological father. 1999 WL 33085, at \*1. When the parties separated, White filed a petition to legitimate the child, and an order was entered declaring him as the child's biological father. *Id.* Several years later, the child "repeatedly told Mr. White that he had two fathers," and, apparently without delay, White obtained genetic testing, which "categorically excluded" White as the child's father. *Id.* "Armed with this [DNA] evidence," White filed a petition to terminate his child support obligation, but the juvenile court denied relief, stating that he had "'willingly undert[aken]'" the obligation and that he had "'perpetrated a fraud upon the Court'" by obtaining the initial legitimation order. *Id.* at \*2. This Court reversed, finding that White's voluntary legitimation of the child did not bar him from pursuing relief, and further that the "irrefutable evidence that Mr. White is not [the child's] biological father" provided sufficient grounds for relief. *Id.* at \*4.

-6-

We acknowledge that Rule 60.02 relief may be available for previously adjudicated fathers who later wish to contest paternity, as recognized in the above-cited cases. However, we distinguish those cases from the instant case. In both *Coppage* and *White*, Rule 60.02 relief was not precluded despite a delay between the establishment of paternity and the adjudicated fathers' petitions to disestablish paternity or to terminate support. Here, however, a significant period of time passed not only between the Consent Order acknowledging Appellant's paternity and his Petition to Disestablish Paternity, but more importantly, between his questioning paternity and alleged discovery of non-paternity and his disestablishment petition. At the hearing, Mother testified that Appellant had questioned his paternity since the child was two weeks old, while Appellant set the date at approximately 2003, when the child was five years old. In his "Statement of the Evidence," Appellant concedes that "around 2004 or 2005 [] he heard statements . . . which led him to believe that he may not be the biological father[,]" and that the results of an April 1, 2005 DNA test indicated that he was not the child's father. Thus, by his own admission, Appellant questioned his paternity by 2003, and allegedly learned that he was not the child's father by April 2005. However, Appellant took no action to disestablish parentage for more than four years after questioning paternity and two years after receipt of the DNA test results, until he filed his June 12, 2007 Petition to Disestablish Paternity. Moreover, Appellant apparently continued to support the child, despite his alleged knowledge that the child was not his own, until the time his disestablishment petition was filed. Appellant's only explanation for delay is that he "believed the issue of parentage had been and could be solely resolved by the parties without court intervention." This assertion, though, is undercut by the fact that Appellant was a party to court proceedings to *establish* his paternity. "Rule 60.02 does not . . . permit a litigant to slumber on [his] claims and then belatedly attempt to relitigate issues long since laid to rest." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). Under the facts of this case, we find that Appellant's petition seeking Rule 60.02 relief was not filed within a reasonable time, and therefore, that the trial court did not abuse its discretion in dismissing such. Having so found, we need not address the introduction of DNA test results into evidence.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the juvenile court. Costs of this appeal are taxed to Appellant, Kempton Lamonte Daniels, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.