# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 18, 2012 Session

## MARY CLAUDINE HOLLAND v. ROBERT SHIELDS HOLLAND

**Appeal from the Chancery Court for Union County**
**No. 5927     Hon. Billy J. White, Chancellor**

---

**No. E2011-00782-COA-R3-CV-FILED-MAY 15, 2012**

---

This appeal involves the "spousal impoverishment" provision of the Medicare Catastrophic Coverage Act of 1988. Mary Claudine Holland and Robert Shields Holland were married in 1967. Robert Shields Holland was placed in a nursing home for health-related problems in 2009. Mary Claudine Holland filed a complaint for separate maintenance in which she sought division of the marital assets and income. The trial court granted her request and filed an order reflecting its decision. The Tennessee Department of Human Services filed a motion to intervene and to set aside the order. The trial court denied the motions. The Tennessee Department of Human Services appeals. We reverse the judgment of the trial court and remand with instruction to the court to reconsider the complaint for separate maintenance with the Tennessee Department of Human Services present as an intervening party.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, and Sue A. Sheldon, Senior Counsel, Health Care Division, Nashville, Tennessee, for the appellant, Tennessee Department of Human Services.

K. Karl Spalvins, J. Terry Holland, and Shannon M. Holland, Knoxville, Tennessee, for the appellees, Mary Claudine Holland and Robert Shields Holland.

## OPINION

## I. BACKGROUND

Mary Claudine Holland ("Wife") depleted her savings and borrowed funds in order to ensure that Robert Shields Holland ("Husband") was properly cared for in the nursing home facility. Wife filed a complaint for separate maintenance in which she sought a transfer of the marital assets in order to ensure that she would be able to maintain her lifestyle if Husband were to apply for Medicaid, which provides "medical assistance to low-income persons who are age 65 or over, blind, disabled, or member of families with dependent children or qualified pregnant women or children." 42 C.F.R. § 430.0. Prior to the passage of the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), a married couple had to deplete their resources in order to qualify for Medicaid coverage. *McCollum v. McCollum*, No. M2011-00552-COA-R3-CV, 2012 WL 1268296, at *2 (Tenn. Ct. App. Apr. 12, 2012). This process often left the non-institutionalized spouse ("community spouse") destitute. *Id.* However, the MCCA provided the community spouse with a Minimum Monthly Maintenance Needs Allowance ("MMMNA") and a Community Spouse Resource Allowance ("CSRA") and allowed the community spouse to petition the court or the Tennessee Department of Human Services ("TDHS") for an increase of the allowances. *Id.* at *3-4.

Here, Wife petitioned the court in hope of transferring the marital assets and obtaining a higher MMMNA than what was provided for as the baseline amount. Husband agreed that a division of the assets was "necessary and proper under all of the circumstances that exist by and between the parties." In Wife's statement of monthly income and expenses, she alleged that her monthly income was $1,925.35 and that her monthly expenses were $7,970.59, resulting in a monthly deficit of $6,045.24 due to Husband's inability to contribute.

A hearing on the petition was scheduled, but TDHS was not notified of the impending hearing. The court entered an order on May 18, 2010, finding that Wife was a spouse in need of support from Husband and that she had "established to the satisfaction of the [c]ourt that she [was] entitled to a deviation from the starting point of the allocation of resources and income set forth in the [MCCA]." The court noted that it had "carefully weighed and considered various factors, including among others the intent of the [MCCA], the relative ages and life expectancies of the parties, and the current and anticipated monthly expenses of the parties." Relative to Wife's ability to work, the court stated,

> [Wife] suffers from health conditions of her own that limit her productivity, including neuropathy, arthritis, and residual effects from a lumbar surgery performed in 1999 that are with her to the present date. Her current

employment consists primarily of standing on a concrete floor with little to no sitting whatsoever. As a result, [Wife] is uncertain how long she will be able to continue with her present employer.

The court awarded Wife the majority of the couple's assets and Husband's social security benefits and provided that if Husband were to be approved for Medicaid, Wife's MMMNA would be $6,045.24. Following entry of the court's order, Husband applied for Medicaid benefits.

TDHS filed a motion to intervene and to set aside the order on September 20, 2010, approximately 125 days after the order was entered. TDHS asserted that it was entitled to intervene as of right because its interest in the hearing was not adequately protected. TDHS opined that it was responsible for determining income and resource eligibility for Medicaid benefits and that the transfer of the couple's income and assets impoverished Husband, making him a ward of the state and affecting public funds. TDHS contended that the court failed to find that exceptional circumstances resulting in significant financial duress justified the transfer of the resources and income. TDHS alleged that exceptional circumstances were not present given the fact that the couple's assets were valued at $789,875.07. Husband and Wife responded by asserting that the motion was untimely, that TDHS was not entitled to notice of the proceeding or to be made a party to the proceeding, and that Rule 60.02 relief from the order was unwarranted given the facts of the case.

Following a hearing, the court denied the motion to intervene and the motion to set aside the order. The court found that the judgment was final and that there was no "right or statutory reason to allow [TDHS] to intervene." The court noted that "under current law," TDHS did not even have a right to notice of the proceedings. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised by TDHS on appeal as follows:

A. Whether the trial court erred in denying the motion to intervene.

B. Whether the trial court erred in denying the Rule 60.02 motion.

## III. STANDARD OF REVIEW

"The standard of review on appeal for the denial of intervention as of right is de novo." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). However,

-3-

this court reviews the timeliness of an application for intervention under an abuse of discretion standard. *Id.* Likewise, a ruling on a Rule 60.02 motion to set aside may not be reversed on appeal unless the trial court abused its discretion. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

"Title XIX of the Social Security Act, enacted in 1965, authorizes Federal grants to States for medical assistance to low-income persons who are . . . disabled []." 42 C.F.R. § 430.0. "The program is jointly financed by the Federal and State governments and administered by States." 42 C.F.R. § 430.0. In Tennessee, TDHS is tasked with utilizing "broad Federal rules" in determining "eligible groups, types and range of services, payment levels for services, and administrative and operating procedures." 42 C.F.R. § 430.0; *see also* 42 C.F.R. § 431.10; Tenn. Code Ann. § 71-5-104. TDHS must ensure compliance with the broad federal rules or risk the loss of federal funding. 42 U.S.C. § 1396c; 42 C.F.R. § 430.35. Applicants may receive assistance if their income and resources are within a certain range. The spousal impoverishment provisions of the MCCA were enacted in 1988 to ensure that maintaining an institutionalized spouse's eligibility for medical assistance did not impoverish the community spouse. 42 U.S.C. § 1396r-5; *see Blumberg v. Tennessee Dep't. of Human Servs.*, No. M2000-00237-COA-R3-CV, 2000 WL 1586454, at *2 (Tenn. Ct. App. Oct. 25, 2000). If a spouse believed that the MMMNA or the CSRA was inadequate for his or her needs, the spouse could seek an increase of the amounts through an administrative Medicaid fair hearing or through a court hearing. *See Blumberg*, 2000 WL 1586454, at *2-3. If a spouse elected to pursue an increase through the court system, then the court was tasked with applying "the standards utilized to determine [M]edicaid eligibility in this state." Tenn. Code Ann. § 71-5-121.

### A.

TDHS asserts that the trial court erred in denying the motion to intervene because it had a "duty under federal and state law to ensure that Medicaid eligibility requirements [were] applied correctly to institutionalized persons and their community spouses." TDHS relates that "it will be required to follow the order of allocation made by the trial court in assessing [Husband's] eligibility for Medicaid-funded nursing home care and the patient

liability amount for which [Husband] will be responsible." Wife and Husband respond that TDHS failed to attach the required pleading to its motion to intervene. They contend that denial of the motion to intervene was warranted because the motion was untimely and because the court was authorized to make its decision without TDHS involvement. They assert that TDHS was not even entitled to notice of the proceeding and that TDHS failed to prove that it sustained a distinct and palpable injury meriting its intervention.

As a threshold matter, we acknowledge that TDHS did not attach a separate pleading setting forth the claim or defense for which intervention was sought. *See* Tenn. R. Civ. P. 24.03. However, the motion unequivocally set forth the claim for which intervention was sought and contained sufficient information for the court's consideration.

Intervention as of right is governed by Rule 24.01 of the Tennessee Rules of Civil Procedure, which provides,

> Upon timely application anyone shall be permitted to intervene in an action:
> (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties; or (3) by stipulation of all the parties.

There are essentially four elements that a party seeking to intervene as of right must establish before an application for intervention will be granted. *Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 190-91. The party must show that: "(1) the application for intervention was timely; (2) [he or she has] a substantial legal interest in the subject matter of the pending litigation; (3) [the] ability to protect that interest is impaired; and (4) the parties to the underlying suit cannot adequately represent [that] interest[]." *Id.* "While the precise nature of the interest required to intervene as of right has eluded exact definition, it is clear that the right does not include a mere contingent, remote, or conjectural possibility of being affected as a result of the suit, but must involve a direct claim on the subject matter of the suit such that the intervenor will either gain or lose by direct operation of the judgment." *Id.* at 192.

We acknowledge that the court was fully capable and authorized to decide the issues before it without TDHS involvement. However, we believe that TDHS had a substantial legal interest in the subject matter of the litigation because it was tasked with ensuring compliance with federal requirements in order to maintain state funding of Medicaid. Regardless of whether TDHS was involved in the hearing, it must follow a court order regarding monthly income for the support of the community spouse. *See* 42 U.S.C. § 1396r-

5(d)(5) ("If a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall be not less than the amount of the monthly income so ordered."). TDHS would be bound by such an order even if it would not have granted a deviation from the MMMNA. *Blumberg*, 2000 WL 1586454, at *3. The parties, Wife and Husband, could not adequately protect TDHS's interest because they were biased in their hope of securing additional income and resources for Wife. Accordingly, we conclude that TDHS had a substantial legal interest in the subject matter of the suit, that the interest was impaired, and that the parties to the suit could not adequately protect that interest. We must now determine whether the motion for intervention was timely.

"The timeliness of an intervention is governed by equitable principles, and is determined by the facts and circumstances of each particular case." *Am. Materials Techs., LLC v. City of Chattanooga*, 42 S.W.3d 914, 916 (Tenn. Ct. App. 2000). In determining whether an intervention is timely, courts consider,

(1) the point to which the suit has progressed;

(2) the purpose for which intervention is sought;

(3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case;

(4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and

(5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* "Generally, an applicant for intervention must show proper diligence, and the right to intervene may be lost by unreasonable delay or laches after knowledge of the suit." *Id.* (citing *EEOC v. United Air Lines, Inc.*, 515 F.2d 946 (7th Cir.1975)). "[I]ntervention may be timely, after judgment, depending upon the facts." *Id.* (citing *Hamilton Nat. Bank v. Woods*, 238 S.W.2d 109, 112 (Tenn. Ct. App. 1948)). In such cases, "the rights of the original litigants [may] not be injuriously affected," the court must still maintain jurisdiction over the judgment and subject matter, and "good and sufficient cause" must be "shown for the delay." *Woods*, 238 S.W.2d at 112.

Here, intervention was sought after the judgment had been filed. This case is remarkably similar to the factual scenario presented before this court in *Crisel v. Crisel*, No. E2010-02042-COA-R3-CV, 2012 WL 565914, at *2 (Tenn. Ct. App. Feb. 22, 2012), where TDHS sought to intervene and set aside a similar judgment 31 days after the court entered its judgment. This court noted that while TDHS was tasked with ensuring compliance with federal law in issues relating to Medicaid eligibility, it was not entitled to notice of hearings in which the community spouse sought to increase the MMMNA. *Id.* at *5. In *Crisel*, this court established a bright-line rule requiring parties to provide notice to TDHS of such hearings in order to protect TDHS's interest in the proceeding. *Id.*

Here, TDHS learned of the court's judgment after Husband applied for Medicaid benefits and filed its motion approximately 125 days after entry of the order. The delay was not unreasonable, and the court also maintained jurisdiction over the judgment because a notice of appeal had not been filed. TDHS did not receive notice of the hearing until after the order had been entered, providing good and sufficient cause for the delay in filing. Additionally, the purpose for which intervention was sought, to ensure compliance with federal law in order to secure federal funding, is paramount. We also do not believe that the rights of the parties will be injuriously affected by the intervention of TDHS. Wife will be given the opportunity to present her petition before the court again, while TDHS will merely be given the opportunity to argue that the requested increases in the MMMNA and the CSRA were excessive. With these considerations in mind, we conclude that the trial court erred in denying the motion to intervene.

B.

Having determined that the trial court should have granted the motion to intervene as of right, we must now address the issue of whether the trial court erred in denying the Rule 60.02 motion to set aside the order. An order may be set aside pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure when,

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud [], misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective

-7-

application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Relief under this rule is considered "an exceptional remedy." *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). The function of the rule is to "strike a proper balance between the competing principles of finality and justice." *Banks v. Dement Constr. Co., Inc.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). "Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991).

Here, the motion for relief pursuant to Rule 60.02 was filed 125 days after the order was entered. TDHS alleges that Wife failed to present exceptional circumstances justifying the increase and that the court failed to enter the requisite finding pursuant to 42 U.S.C. § 1396-r5(e)(2)(B) that exceptional circumstances justified impoverishing Husband and awarding Wife all of Husband's income and the majority of the marital assets. TDHS contends that the court's denial of the motion was an abuse of discretion because the court merely found "that the parties to the action had made full disclosure to it of all the issues and assets, that there had been no mistake or inadvertence, and that [there was] no right or statutory reason to allow [TDHS] to intervene." Husband and Wife respond that the trial court was not required to find exceptional circumstances justifying the increase. They note that even though the trial court was not required to make such a finding, the court's order supported a finding of exceptional circumstances given Wife's medical condition and their financial situation.

We agree that the court was required to but failed to make the requisite finding that exceptional circumstances existed justifying the increase in the MMMNA and the CSRA. *See McCollum*, 2012 WL 1268296, at *7 (holding that the court must find exceptional circumstances resulting in significant financial duress in order to justify an increase in the MMMNA and the CSRA). However, a mistake of law cannot form the basis for Rule 60.02 relief. *Spruce v. Spruce*, 2 S.W.3d 192, 195 (Tenn. Ct. App. 1998).

While we decline to reverse the trial court pursuant to Rule 60.02(1), we believe that relief may be warranted pursuant to Rule 60.02(5). "Relief under Rule 60.02(5) is only appropriate in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship." *Lethcoe*, 18 S.W.3d at 624. We believe that this is a

case of overwhelming importance and that extraordinary circumstances have been shown. The court's failure to follow the federal requirements relating to Medicaid eligibility could result in the loss of federal funding, placing a large number of individuals at risk of losing medical assistance. With these considerations in mind, we conclude that the court's failure to issue the requisite finding provided a sufficient reason to set aside the order under the catch-all provision of Rule 60.02(5) of the Tennessee Rules of Civil Procedure. Accordingly, we reverse the order of the trial court denying the Rule 60.02 motion.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for the court to reconsider Wife's complaint for spousal support with TDHS present as an intervening party. Costs of the appeal are taxed to the appellees, Mary Claudine Holland and Robert Shields Holland.

_____
JOHN W. McCLARTY, JUDGE