Bama **FIELDER** and First American National Bank, Co–Executors of the Estate of O.W. Fielder, Plaintiff/Appellee, and Neil Brown, Plaintiff/Appellant,

v.

**LAKESITE ENTERPRISES, INC., et al., Defendants.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Sept. 15, 1993.

Permission to Appeal Denied by Supreme Court Feb. 7, 1994.

Gina L. Zylstra, Alice Bradley Essary, Bradley, Van Sant, Essary & Zylstra, Nashville, for plaintiff/appellant.

Ross H. Hicks, Cunningham, Mitchell, Hicks, Brollier, McMillan & Carney, Clarksville, for plaintiff/appellee.

## OPINION

CANTRELL, Judge.

The appellant in this case is asking for relief from a judgment of the Stewart County Chancery Court, under Tenn.R.Civ.Proc. 60.-02. That court divided the proceeds from a foreclosure sale of real property between the appellant and his co-plaintiffs in the foreclosure suit. The appellant argues he should be granted relief from the judgment because of mistake, excusable neglect and unfair surprise. For reasons set out below, we affirm the decision of the chancellor.

### I.

In 1970, appellant Neil Brown and Mr. O.W. Fielder became co-owners and tenants in common of 154 acres of real property adjoining Kentucky Lake. They together developed the property into a recreational area known as "Brownfield Resort." In 1978, they sold the property to Lakesite Enterprises Inc., which planned to subdivide the parcel into smaller tracts, for development and sale to third parties.

In payment for the property, the president of Lakesite Properties executed a promissory note in the amount of $400,000, payable to Mr. Brown and Mr. Fielder, which was secured by a deed of trust on the property. The note contained a provision that the par-

ties would release their security interest in specific portions of the property as they received payment from Lakesite Enterprises or assignments of notes procured by Lakesite from third-party purchasers of lots.

The appellant and Mr. Fielder maintained a joint checking account in the Bank of Dickson, which required the signatures of both in order to withdraw or transfer funds. Funds received from Lakesite Enterprises were deposited into the account and divided from time-to-time between the appellant and Mr. Fielder on an equal basis.

Lakesite sometimes forwarded to the parties a mixture of cash and promissory notes, acquired through the sale of lots. On three occasions, appellant Brown, who had a need for cash, agreed in writing to take all the cash, in exchange for which he released his interest in a total of twenty-one (21) promissory notes to Mr. Fielder. The bookkeeper for Lakesite Enterprises notified the makers of those notes that they should make payment to Mr. Fielder alone. She also kept a ledger, where she recorded which lots Mr. Fielder and Mr. Brown both retained an interest in (noted as "Brown and Fielder" lots) and which lots Mr. Fielder alone had an interest in (noted as "Fielder only" lots). Mr. Fielder opened an account in the First American National Bank in his name only, to hold the funds received from payments on the promissory notes on which Mr. Brown had relinquished his interest.

Mr. Fielder died in 1981. His wife, Bama Fielder, and the Trust Department of First American National Bank, were named co-executors of the estate.

Eventually, Lakesite abandoned the business of selling lots and defaulted on its promissory note. On September 1, 1988, Mrs. Fielder, the bank, and the appellant Mr. Brown brought suit to foreclose on the unreleased property. The parties realized $131,-625 on the foreclosure sale. On August 10, 1990, the chancellor ordered that all funds in the account in the Bank of Dickson, and the account in the First American National Bank be transferred to the clerk and master, to be held by her pending distribution to Mr. Brown and the estate of Mr. Fielder. At the final hearing on February 4, 1992, the chancellor heard proof as to the appropriate distribution of funds realized from the foreclosure sale. He issued an order on February 28, 1992, dividing the money realized from the "Brown and Fielder" lots equally between Mr. Brown and the estate of Mr. Fielder, and allocating all funds realized from the "Fielder only" lots to the estate.

The appellant filed a motion for new trial on March 30, 1992. The chancellor found that the matters set forth in Mr. Brown's motion were of a nature that should be addressed, not in a motion for new trial, but in a Rule 60.02 motion for relief from judgment. Mr. Brown filed a Rule 60.02 motion on August 7, 1992. After a hearing, the chancellor issued an order, filed on October 20, 1992, declaring that Mr. Brown had failed to offer sufficient evidence for the court to grant his motion. Mr. Brown appealed the chancellor's order to this Court.

In his motion and in this appeal, Mr. Brown claimed that he did not realize that the proceeds from the foreclosure sale were not going to be divided on an equal basis, and that he therefore had no opportunity to prepare to meet the proof advanced by the estate of Mr. Fielder. He further alleged that he had been denied access to a ledger kept by the bookkeeper for Lakesite Enterprises, which ledger was used to determine his and the estate's rights to the foreclosed lots. He also contended that he suffered from a hearing impairment that prevented him from understanding the proceedings in chancery court.

## II.

■ We note at the outset that relief under Rule 60.02 is considered "an exceptional remedy." *Nails v. Aetna Insurance Company*, 834 S.W.2d 289, 294 (Tenn.1992). Its function is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn.1976). It operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235,

238 (Tenn.1990). But, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." *Banks v. Dement Construction Company,* 817 S.W.2d 16, 18 quoting *Toney v. Mueller Co.,* 810 S.W.2d at 146 (Tenn.1991).

■ A decision on a Rule 60.02 motion is in the sound discretion of the trial judge. "The scope of review on appeal is limited to whether the trial judge abused his discretion." *Toney v. Mueller Co.,* 810 S.W.2d 145, 147 (Tenn.1991). In the case before us, we see no evidence that the chancellor abused his discretion in denying Mr. Brown's motion.

■ Mr. Brown contends that he was unprepared to testify as to his business relationship with Mr. Fielder at the final hearing on February 4, 1992, because of "mistake, surprise or excusable neglect." But the record shows that after the judicial foreclosure, notice was properly sent to Marshall S. Stuart, Jr., of White, Regen and Stuart, attorneys for Mr. Brown, to the effect that a hearing would be held to distribute the money under the direction and control of the court.

■ The notice states that "certain conflicts and discrepancies may exist between the plaintiffs as to the equitable distribution of such money." If Mr. Brown did not know that he might be required to testify as to business dealings with Mr. Fielder, he certainly should have been alerted to that possibility by the language of the notice. Mr. Stuart was present at the hearing and represented the interests of Mr. Brown. It may be that he failed to effectively communicate to his client the nature of the proceedings, but if this is so, it is not the sort of mistake that Rule 60.02 is designed to correct.

Mr. Brown also alleges misconduct on the part of the appellees in failing to furnish him with a copy of a ledger book which he believed to be in the possession of Lakesite Enterprises, and to which he had no direct access. Appellees contend that the ledger book in question was not under their control, but that relevant pages of the ledger were delivered by the bookkeeper of Lakesite Enterprises to the law offices of White, Regen

and Stuart, where she explained the "F" (for Fielder Only) and "B/F" (for Brown and Fielder) notations in the presence of attorney Barney Regen and Mr. Brown, and that subsequently, additional relevant records from the same source were received in the same offices, again in the presence of Mr. Regen and Mr. Brown.

■ This conflict in testimony required the chancellor to determine the relative credibility of witnesses appearing before him, and his findings must be granted great weight by the trial court. Apparently, the chancellor determined that Mr. Brown's inability to examine the entire ledger was not caused by fraud, nor did it produce surprise relievable by Rule 60.02. The chancellor having made the determination, his findings will not be upset by the Court of Appeals, "unless other real evidence compels the contrary conclusion." *See Rhea v. Meadowview Elderly Apartments,* 676 S.W.2d 94, 96 (Tenn.App. 1984).

■ As to the question of Mr. Brown's hearing impairment, and the prejudice to his interests resulting from an alleged inability to hear or understand the proceedings, we note that the trial court might have been able to grant the Rule 60.02 motion if it truly believed that such an impairment effectively deprived Mr. Brown of his day in court. But the record shows no proof as to the extent of Mr. Brown's impairment other than his affidavit. The chancellor was the trier of fact, and had the opportunity, which we did not have, to observe Mr. Brown during the proceedings. Thus, there is no basis for this court to overturn the findings of the chancellor, absent other proof of Mr. Brown's contention.

As noted above, a Rule 60.02 motion will only be granted in exceptional circumstances. The burden is on the moving party to come forward with proof of facts which explain why he was justified in failing to avoid mistake, inadvertence, surprise or neglect. *Hopkins v. Hopkins,* 572 S.W.2d 639, 640 (Tenn.1978). In this case, we see an assertion that the appellant is entitled to Rule 60.02 relief, without persuasive evidence of

the exceptional circumstances that would justify it.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Stewart County for such other proceedings as may become necessary. Tax the costs on appeal to the appellant.

TOMLIN, P.J., W.S., and LEWIS, J., concur.