IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 26, 2001 Session

## SUSAN MARIE SELLERS v. RANDALL LEE SELLERS

**Direct Appeal from the Chancery Court for Carroll County**
**No. 96-DR-162; The Honorable Ron E. Harmon, Chancellor**

_____

**No. W2000-01475-COA-R3-CV - Filed May 15, 2001**

_____

This appeal involves a belated attempt by the appellant, Randall Lee Sellers, to obtain relief from child support obligations based upon a claim that he is not the biological father of the child. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Jeffrey W. Parham, Martin, TN; Thomas F. Bloom, Nashville, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Kim Beals, Assistant Attorney General, for Appellee

**OPINION**

**Facts and Procedural History**

In 1990, Susan Sellers (Ms. Sellers) had a relationship with a man named Randy Castleman. As a result of this relationship, Ms. Sellers became pregnant. On March 4, 1991, Joseph Matthew Sellers (Matthew) was born. Although Ms. Sellers knew that Mr. Castleman was Matthew's father, she has never attempted to obtain any financial assistance from him. Furthermore, Ms. Sellers stated that she has not had any contact with Mr. Castleman since Matthew was six weeks old.

Ms. Sellers met Randall Lee Sellers (Mr. Sellers) in 1992, and they later married on March 27, 1993. Ms. Sellers did not want Matthew to suffer the stigma of having been born out of wedlock. As a result, Mr. and Ms. Sellers agreed to change Matthew's birth certificate so that Mr. Sellers would be listed as the father. Mr. Sellers, however, never formally adopted Matthew.

Sometime thereafter, the parties' relationship deteriorated, and Ms. Sellers filed for divorce on February 15, 1999. When Ms. Sellers' attorney inquired if there were any minor children born of the marriage, Ms. Sellers replied affirmatively and named Matthew. Accordingly, Ms. Sellers' attorney averred in the complaint that Matthew was born of the marriage.

After the complaint for divorce was filed, the parties, who were both represented by counsel, negotiated the marital dissolution agreement. The MDA provided that Mr. Sellers would have joint legal custody of Matthew and that he would provide support for Matthew in the amount of $200.00 per month. When asked why he signed the MDA when he knew that Matthew was not his biological child, Mr. Sellers replied "because [Matthew] had my last name and I thought I had no other choice." Furthermore, Mr. Sellers stated that he asked his trial attorney if he was obligated to support Matthew and his attorney responded affirmatively, stating that his support obligation was based on the fact that Matthew carried his last name. The final decree of divorce was granted on February 13, 1997.

In July 1999, Ms. Sellers filed a Petition for Criminal Contempt against Mr. Sellers for a child support arrearage of $4,150.00. At this juncture, Husband allegedly became aware for the first time that he was not obligated to support Matthew simply because Matthew shares his last name. Mr. Sellers obtained genetic testing, and he was conclusively eliminated as Matthew's biological father. Mr. Sellers filed a motion for relief from his child support obligation pursuant to Rule 60.02(4) of the Tennessee Rules of Civil Procedure. Both parties briefed the issue and a hearing was held on March 21, 2000. The chancellor denied Mr. Sellers' request for Rule 60 relief. Furthermore, the chancellor ordered Mr. Sellers to pay $315.00 per month; $210.00 of current support and $105.00 towards the arrearage. Mr. Sellers filed his notice of appeal on June 20, 2000.

The sole issue on appeal, as we perceive it, is whether the trial court abused its discretion in denying Mr. Sellers' Rule 60.02 motion for relief from the judgment requiring him to pay child support.

**Standard of Review**

First, we note that relief under Rule 60.02 is considered "an exceptional remedy." Nails v. Aetna Ins. Co., 834 S.W.2d 289, 294 (Tenn. 1992). The function of Rule 60.02 is "to strike a proper balance between the competing principles of finality and justice." Jerkins v. McKinney, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 operates as "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." Thompson v. Fireman's Fund Ins. Co., 871 S.W.2d 157, 159 (Tenn. 1990). However, "[b]ecause of the 'principle of finality,' the 'escape valve' should not be easily opened." Banks v. Dement Constr. Co., 817 S.W.2d 16, 18 (Tenn. 1991) (quoting Toney v. Mueller Co., 810 S.W.2d 145, 146 (Tenn. 1991)).

To set aside a judgment under Rule 60.02 the burden is upon the movant to prove that he is entitled to relief, and there must be proof of the basis on which relief is sought. See Brumlow v. Brumlow, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); Jefferson v. Pneumo Servs. Corp., 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985). A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge. Accordingly, the scope of review on appeal is limited to whether the trial judge abused his discretion. See Toney v. Mueller Co., 810 S.W.2d 145 (Tenn. 1991); Travis v. City of Murfreesboro, 686 S.W.2d 68, 70 (Tenn. 1985).

## Law and Analysis

Mr. Sellers seeks relief from his child support obligations pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 states, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

TENN. R. CIV. P. 60.02.

Mr. Sellers also relies on White v. Armstrong, No. 01A01-9712-JV-00735, 1999 WL 33085, at *1 (Tenn. Ct. App. Jan. 27, 1999), in which the court of appeals also analyzed a similar Rule 60.02 argument. In White, Daniel White and Brenda Armstrong lived together as husband and wife. See id. at *1. While the parties were cohabitating, Ms. Armstrong gave birth to two sons; Daniel and Juwan. See id. Mr. White had no reason to suspect that he was not the father of both children. Thus, he and Ms. Armstrong began raising the children together. See id. Sometime later, during an argument, Ms. Armstrong informed Mr. White that he was not Juwan's biological father. See id. Mr. White and Ms. Armstrong separated a short time later. See id.

After the separation, Mr. White filed a petition to legitimate Daniel. Mr. White asserts that he believed Daniel was his son. He also stated that he waived DNA testing because he "was going through a lot at that time, and I didn't want to know." Id. Ms. Armstrong countered by alleging that she told Mr. White that he was not the father. The juvenile court entered an order declaring Mr. White to be Daniel's biological father and set his child support obligation at $264.00 per month. See id.

Mr. White paid child support regularly and also visited Daniel regularly. See id. Several years later, after Daniel told Mr. White that he had two fathers, Mr. White obtained genetic testing. The genetic testing conclusively eliminated the possibility that Mr. White could be Daniel's biological father. See id.

As a result, Mr. White filed a petition to terminate his child support obligation, arguing that Ms. Armstrong had fraudulently persuaded him to legitimize Daniel. See id. at *2. The trial court declined to relieve Mr. White of his support obligation, however, stating that he willingly undertook it and that he and Ms. Armstrong had both perpetrated a fraud upon the court when they legitimized Daniel. See id.

When the court of appeals reviewed the case, they noted that while Mr. White's motivation to legitimate Daniel remained unclear, accrediting his testimony, "Mr. White wanted to do the right thing because he believed that he was the boy's biological father." Id. at *4. The court concluded that Mr. White did not perpetrate a fraud upon the court such that he should not be granted relief from his child support obligation. The White court stated that "[p]ost-judgment relief in cases of this sort should not be granted without analyzing the burdens that granting relief or failing to grant relief will place on all who have an interest in the proceeding." Id. at *5. The court then analyzed the burdens of all parties involved, and concluded that Mr. White should be relieved of his child support obligation. See id. at *6.

In the case at bar, Mr. Sellers urges us to rely on White and to overturn his child support obligation. Upon review, however, we find that the facts of the instant case are readily distinguishable from White. While we realize in White that some facts were arguably present that may have put Mr. White on notice that he *may* not have been the father, the facts in the present case are different. Here, Mr. Sellers knew without a doubt that he was not Matthew's father. In fact, Matthew was approximately one year old when Ms. Sellers met Mr. Sellers. As a result, Mr. Sellers cannot claim that he reasonably believed the child was his when he assented to the support obligation.

In Tyler v. Tyler, 671 S.W.2d 492 (Tenn. Ct. App. 1984), the court was presented with a similar case. Mr. Tyler also signed a settlement agreement stating that the child was born of the marriage when he was certain that this was untrue. In fact, Ms. Tyler was pregnant with the child at issue prior to her marriage to Mr. Tyler, and Mr. Tyler knew the identity of the real father. The court stated that:

> [E]ven if we were to agree that this case somehow fits within the very narrow construction given to T.R.C.P. § 60.02(5), **we believe it would still be inappropriate to relieve Mr. Tyler of his free, calculated, and deliberate choice in signing the settlement agreement, in effect, consenting to a finding of paternity, and assenting to the payment of child support when he full well knew he was not the natural father.**

Tyler, 671 S.W.2d at 495 (emphasis added).

While we note that Mr. Sellers argues that his attorney instructed him that he had to pay child support simply because the child carried Mr. Sellers last name, we are not persuaded by this

statement. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. See Humphrey v. David Witherspoon, Inc., 734 S.W.2d 315, 315 (Tenn. 1987). Where the issue for decision depends on the determination of the credibility of witnesses, the trial court is the best judge of credibility and its findings of credibility are entitled to great weight. This is true because the trial court alone has the opportunity to observe the appearance and the demeanor of the witnesses. See Royal Ins. Co. v. Alliance Ins. Co., 690 S.W.2d 541, 543 (Tenn. Ct. App. 1985); Tenn-Tex Prop. v. Brownell Electro, Inc., 778 S.W.2d 423, 425-26 (Tenn. 1989).

Finally, we note Judge Cottrell's statement in her concurrence in Richards v. Read, No. 01A01-9708-PB-00450, 1999 WL 820823, at *1 (Tenn. Ct. App. July 27, 1999). In Richards, the appellant sought to be relieved of child support obligations via Rule 60 for a child born out of wedlock that he had voluntarily legitimated. The appellant had reasonably believed that he was the child's father. While the court granted the appellant relief from his child support obligations in Richards, Judge Cottrell expressed concerns in her concurrence. Judge Cottrell stated that:

> I am concerned that the majority opinion, and the other recent opinions discussed therein, may be construed as establishing a black letter rule that every father who has voluntarily acknowledged paternity and who is later proved not to be the child's biological father may be relieved from the parental obligation he previously undertook. That is not the current state of the law, and I do not believe it is the majority's intent to make it so.

Richards, 1999 WL 820823, at *12.
Furthermore, Judge Cottrell stated that "[i]n balancing the equities of each case, as Rule 60.02 requires us to do, the financial interests of a father at law who is not also the biological father cannot be presumed to always outweigh the interests of a child." Id. at *12.

Upon review of the entire record in this case, and after analyzing the burdens and interests of all parties as we are required to do, we find that this is not a case where Rule 60 relief is warranted. Mr. Sellers voluntarily signed the marital dissolution agreement with full knowledge that he was not Matthew's father. Therefore, the trial court did not abuse its discretion in declining to grant Mr. Sellers' relief from his child support obligations.

## Conclusion

Accordingly, for the aforementioned reasons, we hereby affirm the judgment of the trial court. Costs are taxed against the appellant, Randall Lee Sellers, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE