# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 26, 2012 Session

## JEFFREY R. SMITH, ET AL. v. RICHARD GARVIN AND SERENA GARVIN

**Appeal from the Chancery Court for Rutherford County**
**Nos. 10CV1009 and 061320CV     L. Craig Johnson, Judge**

---

**No. M2011-01282-COA-R3-CV - Filed June 19, 2012**

---

Homeowners in a subdivision used water from a sulfur well to water their lawn. Neighbors complained about the noxious odor, and when the Homeowners continued to use the sulfurous water, the neighbors sought and obtained an order permanently enjoining them from using their well for irrigation purposes. Three years later the Homeowners began using the sulfur well to water their lawn again, and the neighbors filed a petition seeking to hold the Homeowners in contempt for violating the court's order. The Homeowners filed a retaliatory complaint against the neighbors, and the neighbors sought Rule 11 sanctions for having to defend that action. The trial court consolidated the hearing of the two motions, and following a hearing where testimony and documentary evidence were introduced, the court found the Homeowners had willfully violated the court's order on at least nine occasions. The court also found the Homeowners' action was filed in violation of Rule 11 and fined the Homeowners $1,000. The Homeowners appealed, claiming the two motions should not have been heard together and that the evidence did not support the court's finding of willfulness beyond a reasonable doubt. We conclude the court did not abuse its discretion in hearing the two motions in the same proceeding, and that the evidence was not insufficient for the court to have found the Homeowners guilty of willfully violating its earlier order beyond a reasonable doubt. We thus affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

John Patrick Cauley, Franklin, Tennessee, for the appellants, Richard Garvin and Serena Garvin.

Jeffrey Russell Smith, Murfreesboro, Tennessee, for the appellees, Jeffrey R. Smith, Vickie

L. Smith, Ken Lamberson, Paula Lamberson, Anthony Langeland, and Melissa Langeland.

**OPINION**

### I. BACKGROUND

This case involves the willful violation of a court order and a subsequent finding of criminal contempt. The parties are all neighbors who reside in an area known as the Riverbend Subdivision, located in Murfreesboro, Tennessee. Richard and Serena Garvin (the "Garvins") have an irrigation system that initially used water from a well they had dug on their property. The water had a strong sulfurous odor that irritated their neighbors (hereinafter referred to as "the Neighbors"), causing them to complain to the homeowners' association. Following a hearing, the homeowners' association asked the Garvins to refrain from using their well to irrigate because the odor constituted a nuisance. The Garvins continued to water their lawn with the malodorous well water, and in August 2006, the Neighbors filed a complaint in the Chancery Court in which they sought to permanently enjoin the Garvins from using their well water for irrigation purposes.

Following a trial in April 2007, the trial court permanently enjoined the Garvins from using water from the sulfur well to irrigate their lawn (the "2007 Order"). The court warned the Garvins that "any violation of the injunction will subject the violator to punishment by the Court, upon proper application and proof presented, of 10 days incarceration per violation."

The unrebutted testimony at trial showed that the Garvins complied with the 2007 Order for a little over three years, and then beginning in June 2010 the Garvins' Neighbors again began noticing the sulfur smell whenever the Garvins watered their lawn. The Neighbors reminded the Garvins about the court order enjoining them from using their well water for irrigation purposes. When the Garvins ignored their Neighbors' requests that they comply with the 2007 Order, the Neighbors filed a petition on June 25, 2010, asking the court to find the Garvins in criminal contempt and to punish them by incarcerating them in the Rutherford County jail. The Neighbors also asked the court to award them attorney's fees and costs.

The Garvins responded by filing a complaint the following week against the same neighbors who had filed the petition for criminal contempt. The Garvins titled their complaint "Plaintiffs' Petition for Harassment and for Malicious Prosecution." In their complaint, the Garvins complained about fences the Neighbors allegedly erected in violation of the Riverbend covenants. The Garvins alleged the Neighbors threatened the Garvins, stating that if the Garvins did not terminate their legal action for violations of the

subdivision's covenants, the Neighbors would have the Garvins locked up for the way they watered their lawn. The Garvins' petition failed to specify a cause of action and failed to ask the court for any particular relief.

A majority of the neighbors named as defendants in the Garvins' action filed a motion to dismiss and a motion for sanctions.[1] The Neighbors alleged the Garvins' action was filed in retaliation for their Petition for Criminal Contempt and that it lacked any merit. The Neighbors asserted the Garvins' action was vindictive, malicious, and frivolous. The Neighbors asked the court to dismiss the Garvins' action and to issue sanctions against the Garvins pursuant to Rule 11.03 of the Tennessee Rules of Civil Procedure.

## II. TRIAL COURT PROCEEDINGS

On November 15, 2010, the trial court scheduled a hearing to be held on November 30 to consider the Neighbors' petition for criminal contempt. The following day, on November 16, the Garvins filed a Notice of Voluntary Non-Suit of their complaint. At the hearing on November 30, the trial court scheduled a hearing for February 25, 2011, to consider both the Neighbors' petition for criminal contempt as well as the Neighbors' motion for sanctions.

The trial court held a hearing on February 25, 2011, during which testimony was taken and documentary evidence was introduced. Following the hearing, the trial court stated the following from the bench with regard to the Neighbors' petition for contempt:

> As is obvious from the proof, there is no direct eyewitness testimony that proves Dr. Garvin or his wife turned on the well that smells of sulfur to irrigate their yard. However, I find the following essential facts beyond a reasonable doubt . . . . Dr. Garvin and his wife knew of the court's order in 2007 and clearly knew the ramifications of violating that order. The defendants had the exclusive control of the use of the well and the irrigation system.
>
> During the summer of 2010, particularly June, the irrigation system was used by the Garvins on at least every – on an every other day basis to water their lawn. The water used clearly smelled of sulfur.
>
> It's clear to the court that in sometime in August [2010] the Garvins

---

[1] Two of the neighbors the Garvins named as defendants filed an Answer to the Garvins' Complaint denying the allegations and stating they had never erected a fence on their property.

switched their irrigation system to city water usage. This is shown and corroborated by the statistics shown by the Murfreesboro Water and Sewer Department, and there is no other explanation for that.

> There is no reasonable doubt in my mind that the well was used to water your yard, Mr. and Mrs. Garvin, during June of the year 2010 by use of the well; therefore I find beyond a reasonable doubt that you've both committed willful contempts on at least nine occasions in June 2010.

Then, turning to the Neighbors' motion for sanctions, the trial court stated:

> I also find that you filed suit against the plaintiffs as a weapon and a tactic to further your cause, and the lawsuit had no basis in law or fact. However, you are not a lawyer and you're not familiar with the rules of civil procedure and the standards of conduct of attorneys, and you did dismiss your case, so the only sanction I find in that case is the payment of attorney fees to defend that action.

> As to your punishment for willful criminal contempt, the court . . . back in 2007 had previously given you notice that each violation could result in up to 10 days incarceration. However, because of the plea of the plaintiffs, I'm going to suspend your sentence of two days on each of the nine instances for a total of 18 days upon condition that you pay the attorney's fees and satisfactory proof is given to the plaintiffs and to their attorney, Mr. Smith, that your well has been permanently disabled.

Shortly after the court announced its ruling from the bench, the Garvins filed an Objection to the Award of Attorney Fees. The basis for the Garvins' objection was that (1) the court did not have authority to award attorney fees as punishment for criminal contempt, and (2) the Neighbors' attorney was also a named party and material witness; therefore he was not entitled to an award of attorney fees. The Garvins also objected to the court's requirement that they permanently disable their well as a condition of the continued suspension of their eighteen-day sentence.

The trial court entered an Opinion and Order in April 2011 in which it clarified that the attorney's fees were awarded as a sanction for the Garvins' filing their petition for harassment and malicious prosecution, they were not awarded as punishment for the criminal contempt. The trial court rescinded its award of fees, however, and instead ordered the Garvins to pay $1,000 into the court as a Rule 11 sanction for filing a frivolous case intended

to harass the Neighbors. In addition, the trial court rescinded its order that the permanent disabling of the Garvins' well should be made a condition of the suspension of their criminal contempt sentence. The court noted, however, that the court had ordered the well to be permanently disabled, and that Order stood. The court warned the Garvins that any further violations of the court's Orders would be dealt with as civil and/or criminal contempt and reiterated that the eighteen days' incarceration remains suspended upon the Garvins' "good behavior."

In their Notice of Appeal, the Garvins indicated they were appealing the Opinion and Order insofar as it applied to both the Neighbors' case against the Garvins as well as the Garvins' case against the Neighbors.

The Garvins raise two issues on appeal. First, the Garvins contend they were denied a fair hearing because the hearing on February 25, 2011, involved issues from two different cases. The Neighbors' motion for criminal contempt involved the Neighbors' petition against the Garvins, and the Neighbors' motion for sanctions involved the Garvins' action against the Neighbors. Second, the Garvins assert the trial court erred by concluding the evidence supported a finding beyond a reasonable doubt that they willfully violated the trial court's 2007 Order enjoining them from using their sulfur well to irrigate their lawn.

### III. CONSOLIDATION FOR HEARING OF PETITION FOR CRIMINAL CONTEMPT AND MOTION FOR SANCTIONS

The Garvins assert they were prejudiced by the trial court's consolidation of the two cases for purposes of the hearing and point to the relief the Neighbors sought in their petition for criminal contempt as the source of their prejudice. In their petition, the Neighbors asked the court to incarcerate the Garvins as punishment for their criminal contempt and sought the payment of their attorney's fees and costs. The Garvins point out that the statute setting forth the punishment a court can impose based on a finding of criminal contempt does not provide for an award of attorney's fees.[2] However, it is clear upon reviewing the trial court's ruling from the bench as well as its written order that the punishment the court imposed for the Garvins' violation of the court's 2007 Order was limited to a suspended eighteen-day sentence. The court's order that the Garvins pay the Neighbors' attorney's fee was imposed as a Rule 11 sanction for filing a frivolous case; it was not imposed as punishment for their criminal contempt. The court rescinded its requirement that the Garvins pay the Neighbors' attorney's fee, in any event, and required them to pay $1,000 into court as a Rule 11 sanction, so this is really a non-issue.

---

[2]Tenn. Code Ann. §29-9-103 provides that a court may impose a fine or incarceration as punishment for criminal contempt.

The Garvins fail to show how they were prejudiced by the court's decision to hear the issues pending in the two cases at the same proceeding. Trial courts have discretion to consolidate cases when they share common questions of law or fact. Included in that authority is the authority to hear cases together. Tennessee Rule of Civil Procedure 42.01 is titled "Consolidation" and provides:

When actions involving a common question of law or fact are pending before a court, the court may order all the actions consolidated or heard jointly, and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

We will not reverse the trial court's decision to hear the petition and motion for sanctions in the same hearing unless the court improperly used or abused its discretion, resulting in an injustice or injury to the Garvins. *See Van Zandt v. Dance*, 827 S.W.2d 785, 787 (Tenn. Ct. App. 1991) (appellate court reviews trial court's decision regarding consolidation of cases for abuse of discretion); *Givens v. Vanderbilt University*, 2011 WL 5145741, at *3 (Tenn. Ct. App. Oct. 28, 2011) (use of the word "may" in Rule 42.01 means the trial court has discretion to determine whether consolidation is appropriate).

Under the abuse of discretion standard, a trial court's ruling

"will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 84 (Tenn. 2001).

The trial court held a hearing on November 30, 2010, to consider the Neighbors' petition for criminal contempt. While the record does not include a transcript of this hearing, the record contains a Scheduling Order that all the parties signed agreeing to a consolidated hearing of the Neighbors' motion for criminal contempt and the Neighbors' motion for sanctions, to be held on February 25, 2011. The Garvins did not object to the consolidation of the cases for this purpose until after the February hearing, when they appealed the trial

court's judgment to this Court.

"Consolidation of separate actions under Tenn. R. Civ. P. 42.01 does not create one action or make those who are parties in one suit parties in the other. Consolidation simply allows a single trial of common issues and permits joint discovery for purposes of judicial economy." *Suggs v. Gallaway Health Care Center*, 2011 WL 1458663, at *3 (Tenn. Ct. App. April 18, 2011) (quoting *McMillin v. Cracker Barrel Old Country Store*, 2009 WL 749214, at *3 (Tenn. Ct. App. Mar.23, 2009) (itself citing *City of Johnsonville v. Handley*, 2005 WL 1981810 at *9 (Tenn. Ct. App. Aug.16, 2005) and *Webb v. Poynter*, 1999 WL 145257 at *4 (Tenn. Ct. App. Mar.18, 1999))). Both the Neighbors' action against the Garvins and the Garvins' action against the Neighbors involved the same parties and some of the same facts. A review of the hearing transcript reveals that the court treated the Neighbors' motion for criminal contempt separately from their motion for sanctions, and the court gave the Garvins ample opportunity to present evidence and argument in support of their positions in both cases. Moreover, the court made sure the Garvins understood their constitutional right not to testify in the criminal contempt portion of the hearing and questioned Mr. Garvin separately from Mrs. Garvin to make sure each of them understood the extent of their rights.

Rule 42.01 expressly authorized the trial court to hear the motions pending in the two related cases at the same time, and the Garvins have failed to cite any relevant cases or set forth a convincing argument suggesting the trial court abused its discretion in hearing the two together. We therefore hold the trial court did not abuse its discretion in consolidating the two cases for purposes of the hearing on February 25, 2011.

## IV. COURT'S FINDING OF WILLFULNESS BEYOND A REASONABLE DOUBT

Turning now to the Neighbors' motion for criminal contempt, the trial court found beyond a reasonable doubt that the Garvins violated the court's 2007 Order not to use their sulfur well to water their lawn at least nine times in June 2010. The court heard testimony and reviewed documentary evidence in reaching its conclusion. The Garvins make much of the fact that there was no direct evidence, meaning eyewitness testimony, showing they willfully violated the 2007 Order, and they argue the circumstantial evidence was insufficient to prove their willful violations beyond a reasonable doubt. The Garvins also complain about being treated as a unit rather than as individuals when the trial court concluded they had "both committed willful contempts on at least nine occasions in June 2010."

The law recognizes two forms of contempt, civil and criminal, with the distinction not based on the nature of the contemptuous act, but on the purpose for which the sanctions are imposed. Sanctions for civil contempt are coercive and remedial in nature. They are

-7-

designed to compel the contemnor to comply with the court's order. *Cable v. Clemmons,* 36 S.W.3d 39, 44 (Tenn. 2001); *Bryan v. Leach*, 85 S.W.3d 136, 158 (Tenn. Ct. App. 2001); *Gossett v. Gossett*, 239 S.W.2d 934, 936 (Tenn. Ct. App. 1951).

A sentence for criminal contempt is punitive and unconditional in nature, and may not be reduced by subsequent compliance with the court's orders. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). The purpose of such punishments is to vindicate the dignity and authority of the law, and the court as an organ of society. *Id.; Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966). Because of their punitive nature, proceedings for criminal contempt are considered quasi-criminal, and they require the courts to accord defendants many (although not all) of the constitutional rights that criminal defendants are ordinarily entitled to, including the requirement that their guilt be proven beyond a reasonable doubt. *Strunk v. Lewis Coal Corp.*, 547 S.W.2d 252, 254 (Tenn. Crim. App. 1976) (citing *Shiflet v. State*, 400 S.W.2d at 544).

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). In the criminal contempt context:

> When the sufficiency of the convicting evidence is raised as an issue on appeal, [the appellate court] must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). We do not reweigh the proof. The defendant has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. A guilty verdict removes the presumption of innocence and it is replaced with a presumption of guilt. We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

*Black v. Blount*, 938 S.W.2d at 399 (citing *State v. Daugherty*, 191 S.W. 974, 974 (Tenn. 1917) and *State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994)).

Individuals convicted of criminal contempt lose their presumption of innocence and bear the burden of overcoming their presumption of guilt on appeal. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (1964) and *Nuclear Fuel Servs. v. Local No. 3–677, Oil, Chem., & Atomic Workers Int'l Union*, 719 S.W.2d 550, 552 (Tenn. Crim. App. 1986)). On appeal, we do not review the evidence in a light favorable to the convicted, and we will not reverse a criminal

contempt conviction unless the evidence is insufficient to support the trier of fact's finding of contempt beyond a reasonable doubt. *Thigpen*, 874 S.W.2d at 53; Tenn. R. App. P. 13(e).

Several neighbors testified as witnesses during the hearing in this case. Their testimony was consistent that from April 2007 until June 2010 they did not notice the Garvins' watering their lawn at all. Beginning in June 2010, however, the Neighbors' witnesses testified that the Garvins watered their lawn more often than their neighbors, sometimes every day or even twice a day, and that whenever the Garvins watered their lawn the smell of sulfur was very strong. These witnesses testified that the Garvins continued to water their lawn during the summer months, but that by August the smell of sulfur had disappeared. The Neighbors introduced records from the Murfreesboro Water and Sewer Department showing that the Garvins' water usage did not vary significantly month to month from February 2008 until August 2010,[3] but that in August 2010 the Garvins' water consumption jumped to eight to nine times what it had been the prior month.

The Garvins introduced a witness who testified that he cut wires running from the Garvin's sulfur well back in May of 2007 at the Garvins' request. A photograph dated August 22, 2010, was introduced showing cut wires, but there was no testimony about when the photograph was taken or who took the photograph. The Garvins introduced another witness who lives down the road from the Garvins in the Riverbend subdivision. This witness testified that he uses a well to water his lawn, and that he used his well to water his lawn during the summer of 2010. There was no testimony regarding whether this witness's well water smells of sulfur. Finally, the Garvins introduced a witness who testified that during the summer of 2009 he showed the Garvins how to hook their irrigation system into the main water system of Murfreesboro and that the Garvins connected their irrigation system to the Murfreesboro water system sometime that year. In response to questioning from the court, however, this witness testified that the Garvins' irrigation system could have been connected to both their sulfur well and the city water in 2009.

Following the close of evidence, the trial court stated: "As is obvious from the proof, there is no direct eyewitness testimony that proves Dr. Garvin or his wife turned on the well that smells of sulfur to irrigate their yard. However, I find the following essential facts beyond a reasonable doubt . . . ." The court then proceeded to list its findings of fact, which included the following:

1.      Dr. Garvin and his wife knew of the 2007 Order and clearly knew the ramifications of violating that order.

---

[3]The records showed there was a modest increase in January 2009 due to a toilet leak.

2. The defendants had the exclusive control of the use of the well and the irrigation system.

3. During the summer of 2010, particularly June, the irrigation system was used by the Garvins at least every other day to water their lawn.

4. The water the Garvins used to water their lawn smelled of sulfur.

5. Sometime in August 2010 the Garvins switched their irrigation system to city water usage.

As to the fact listed as 5 above, the court explained, "This is shown and corroborated by the statistics shown by the Murfreesboro Water and Sewer Department, and there is no other explanation for that."

Where the trial court has seen and heard witnesses, its judgment regarding their credibility and the weight to be given their testimony is accorded considerable deference on appeal. *Clark v. Nashville Machine Elevator Co.*, 129 S.W.3d 42, 46 (Tenn. 2004); *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989). Conflicts in testimony require the trial court to determine the relative credibility of the testifying witnesses. *Fielder v. Lakesite Enterprises*, 871 S.W.2d 157, 160 (Tenn. Ct. App. 1993). In weighing the preponderance of the evidence, we afford great weight to the trial court's determinations of witness credibility, which shall not be reversed absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 839 (Tenn. 2002). When reviewing factual findings based on credibility, we must give considerable deference to the trial courts, because they are in a far better position to observe the demeanor of witnesses than are the appeals courts. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000).

The Garvins emphasize that no witnesses were able to confirm the Garvins were home when their sprinkler system was operating. We find this argument unpersuasive, especially since it is not unusual for a sprinkler system to be automated and put on a timer to turn on regardless of whether anyone is at home. We have reviewed the record, and we conclude the Garvins have failed to carry their burden of showing how the facts in the record and the inferences which may be drawn from them are insufficient, as a matter of law, for a rational trier of fact to find them guilty beyond a reasonable doubt of willfully violating the 2007 Order.

The Garvins complain the trial court should have treated them separately rather than as a unit when it found them both in criminal contempt for violating the 2007 Order. However, the Neighbors' complaint filed in 2006 named both Mr. and Mrs. Garvin as defendants, the 2007 Order applied equally to both Mr. and Mrs. Garvin, and the Neighbors' Petition for Contempt filed in 2010 alleged both Mr. and Mrs. Garvin had willfully violated the 2007 Order and should both be held in criminal contempt. The fact that the orders, new litigation, and judgment in this case applied to both of the Garvins does not, in and of itself, indicate they were treated as a unit. They are separate individuals who each had a responsibility to comply with the 2007 Order. Accordingly, we affirm the trial court's judgment that the Garvins willfully violated the 2007 Order on at least nine occasions in June 2010 and are therefore guilty of criminal contempt based on each of these willful violations.

## IV. CONCLUSION

We affirm the judgment of the trial court. Costs of this appeal are assessed against the appellants, Richard Garvin and Serena Garvin.

_____
PATRICIA J. COTTRELL, JUDGE